## THE STATE v. JOHN C. THOMAS, Appellant.

### Division Two, November 29, 1910.

1. **SEDUCTION: Conditional Promise to Marry.** A defendant cannot be convicted of seduction whose only inducement to procure the illicit intercourse was a promise to marry the woman if she became pregnant. It is not seduction "under or by a promise of marriage," if the female submits to the congress in reliance upon the defendant's special and conditional promise to marry her in the event of pregnancy. If by the prosecutrix's own statement the promise was to marry her "if he got her in trouble," there was no seduction—especially where, even though she testified they had been engaged for a month, the only promise he made to marry her was, as she says, one made before the copulation, that he would marry her if he got her in trouble, and one made some five months later when she informed him she was pregnant. Under such circumstances a demurrer to the evidence should be sustained.

2. ————: ————: **Evidence of Defendant's Willingness to Marry Prosecutrix.** Testimony tending to show defendant's willingness to marry prosecutrix, after he discovered her pregnant condition, does not tend to establish his guilt or innocence of the crime of seducing her under promise of marriage.

Appeal from Greene Criminal Court.—*Hon. A. W. Lincoln, Judge.*

REVERSED.

*Val N. Mason* and *Hamlin & Seawell* for appellant.

The prosecutrix was not seduced, because, as shown by the evidence, the defendant had not gained her affections and her mind was polluted at the time of the first act of intercourse and when he began going with her. And before the defendant should have been convicted the evidence must have shown that he gained her affections and deceived and drew her aside from the path of virtue. State v. Reeves, 97 Mo. 668. The

evidence shows that the sexual favors in this case were for "hire or salary" and not seduction under promise of marriage. That being true the defendant should have been acquitted. State v. Reeves, 97 Mo. 668. To constitute a crime denounced by the statute under review, the female must rely on the promise of marriage and submit her person to the other party because the promise was made. The promise must be the inducement for her to consent to the intercourse. State v. Eckler, 106 Mo. 585; State v. Thornton, 108 Mo. 640. The evidence of the woman as to the promise of marriage must be corroborated. There must be some evidence independent of the principal witness as to the promise of marriage. State v. McCaskey, 104 Mo. 644.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) There is not one word of testimony in this entire record which shows that "the sexual favors in this case were for 'hire or salary,' and not under promise of marriage," as contended by learned counsel for appellant in their brief. Even such an inference is not justified. The proof does establish the fact that the prosecutrix was induced to have sexual intercourse with appellant by reason of the promise of marriage. That very question was sharply presented to the jury, and the jury, under the evidence, found against appellant's contention—the jury found that the intercourse was had by reason of the promise of marriage. This court has often said that it will not weigh the testimony or the credibility of witnesses when there is substantial evidence to submit the issue in controversy to the jury and the jury has passed upon it as in this instance. State v. Fisher, 162 Mo. 171; State v. Dent, 170 Mo. 403; Wilson v. State, 58 Ga. 330. (2) While it is true that the prosecutrix must be corroborated as to the promise of marriage, yet such corroboration may

be by circumstantial evidence alone. State v. Hill, 91 Mo. 426; State v. Marshall, 137 Mo. 473; State v. Fogg, 206 Mo. 710.

BURGESS, J.—Defendant was convicted in the criminal court of Greene county on the first count of an indictment, charging that "on the 9th day of July, A. D. 1906, at the county of Greene and State ·of Missouri, under· and by promise of marriage made to one Amy Longcrier by him, the said John C. Thomas, then and there, unlawfully and feloniously did seduce and debauch her, the said Amy Longcrier, she, the said Amy Longcrier, being then and there an unmarried female of good repute and under the age of twenty-one years, to-wit, of the age of sixteen years, contrary to the form of statute," etc. His punishment was assessed at imprisonment in the penitentiary for a term of three years. Defendant appeals and assigns error.

At the time of the trial the defendant was about twenty-two years of age, and the prosecutrix about seventeen. Both lived near Walnut Grove, Greene county, Missouri, and began "keeping company" with each other when the prosecutrix was fourteen, from which time until January, 1907, defendant called on her once or twice a week, and accompanied her· to church, socials, etc. According to her testimony, they became engaged in March, 1906, the first congress between them occurred about a month thereafter, and they continued having sexual intercourse with each other until January; 1907. As a result of this intimacy she became pregnant, and gave birth to a child on April 14, 1907. It seems she only became aware of her condition in November, 1906, five months prior to parturition, and that she told the defendant about it in December, 1906. He told her, as she states, "not to worry—he would see me out of it."

On the 6th day of January, 1907, the defendant, at the request of the prosecutrix, came to see her at

her home, on which occasion, after a conversation had with her father, R. L. Longcrier, the defendant and prosecutrix agreed to marry. Defendant slept there that night, and the next day started to Springfield, in company with the girl's father, to procure a marriage license. Defendant's home being on the way to Springfield, he stopped at his home to make the situation known to his father, and then proceeded to Springfield and met Mr. Longcrier in front of the courthouse. It was then after office hours, and too late to procure the license. After considerable conversation between them, defendant agreed to meet Mr. Longcrier at the courthouse next morning and secure the license. This he failed to do, but left for Oklahoma the following day. According to the defendant's testimony, he wanted to marry the girl in a decent way, and without having it appear that he was forced so to do by her father; that his reason for leaving was that Mr. Longcrier, during the conversation had in front of the courthouse, threatened to kill him if he did not marry the girl and treat her properly after marriage.

On January 25, 1907, about two weeks after his departure, defendant wrote to his father from Cache, Oklahoma. In that letter he said: "Pa, I wish you would find out whether those people will let me marry that girl now. I would write to them, but that old man will kill me if he finds out where I am. I will take her and live with her if she will behave herself. . . . . I will take her away from there, and nobody will know anything here, and will take the disgrace off both families there. Let me know what those people will do at once." Thereafter, on February 8, 1907, defendant's father wrote to the father of the prosecutrix stating that if the girl wanted his son to marry her, he would endeavor to get him to return and marry her. While testifying as a witness for the state, the girl's father was asked whether he replied to said letter, and if so to state what he said. He answered, "I said it

was no use to marry her now, as the disgrace was on us and in everybody's mouth; that if he had done what he said he would in the first place it would have been all right."

The defendant returned from Oklahoma on the 25th day of February, 1907, and remained at home until the 19th day of March, when he went to Colorado, and was arrested at Aspion, Colorado, the following August, and brought to this state for trial under the charges made in the indictment.

This is a brief outline of the facts in this case. At the close of the state's case and again at the close of all the evidence, the defendant asked for an instruction in the nature of a demurrer to the evidence, which was refused by the court, the defendant duly excepting to the court's ruling.

We have carefully read the record in this case, and have been unable to discover any evidence to support the verdict. While the prosecuting witness did say that she "became engaged to the defendant" in March, 1906, her testimony in that regard lacks corroboration, and her own further testimony proves beyond question that there was no such engagement. Under cross-examination she testified as follows:

"Q. In the letter you wrote to his father you used this language, 'Caz has always promised you if he got you in trouble he would see you out of it?' A. I did. Q. Was that the promise he made before he had intercourse? A. Yes, sir. Q. Didn't he tell you if he got you in trouble he would marry you? A. He did. Q. Was that the only time he promised to marry you? A. No, sir. When was the other time? A. After I learned my condition and told him about it. Q. After the first time you had intercourse did he say, 'If I get you in trouble I will marry you, or get you out of trouble?' A. Said he would marry me. Q. 'If I get you in trouble?' Yes, sir. Q. He wasn't to marry you if he didn't get you in trouble? A. He said he

would marry me if he got me in this trouble. Q. And with that understanding with him—that was the reason you done that? A. Yes, sir. By the court: Q. Had you and this defendant agreed to marry each other before anything was said about sexual relations. A. No, sir.''

Again, the evidence of the girl's father makes it clear that he knew nothing of any prior promise by the defendant to marry his daughter. Testifying as to what occurred at his home on the occasion of the defendant's visit, the day before he and the defendant went to Springfield for the purpose of procuring a marriage license, he said that as he entered the room where the defendant and his daughter were conversing the defendant asked him to step out a minute or so; that he did so, and that when he re-entered the room his daughter said to him, ''We have concluded to marry.'' In the testimony of the girl's mother there is nothing to indicate that she was aware of any promise to marry excepting that made by defendant on January 6, 1907.

The defendant denied that he ever agreed to marry the prosecutrix prior to the first or last act of sexual intercourse, but he admitted that he promised to do so after becoming aware of her condition, and testified that he would have married her had he believed that her parents would treat him with any respect.

The language of the statute upon which the said first count of the indictment is based is this: ''If any person shall, under or by promise of marriage, seduce or debauch any unmarried female of good repute under twenty-one years of age, he shall be deemed guilty of a felony,'' etc. [Sec. 1844, R. S. 1899; sec. 4478, R. S. 1909.] To constitute the crime denounced by the statute, the female must rely on the promise of marriage, and submit her person to the other party because such promise was made. The promise of marriage must be the inducement for her consent to the intercourse. [State v. Eckler, 106 Mo. 585; State v.

Thornton, 108 Mo. 640.] According to the testimony of the prosecutrix, the promise made by the defendant was that he would marry her if he got her in trouble. In other words, the promise of marriage was conditioned upon the act resulting in pregnancy. Such is not the promise mentioned in the statute, and it constitutes no element of the offense. Under the statute, it is not seduction if the female submits her person to the other party in reliance upon his special and conditional promise to marry in the event of pregnancy. The statute cannot be construed to embrace conditional promises of that character. "A person cannot be convicted of seduction whose only inducement to procure the illicit intercourse was a promise to marry the woman if she became pregnant." [People v. Smith, 132 Mich. 58; Spenrath v. State, 48 S. W. 192.] In the Smith case, supra, the court said: "Is a promise to marry, conditioned upon the illicit intercourse resulting in pregnancy, calculated to induce a pure woman to yield her chastity? In our judgment, the question admits of but one answer. Such a promise has no tendency to overcome the natural sentiment of virtue and purity. The woman who yields upon such a promise is in no better position than as though no promise whatever had been made. No wrong is done her if she is put in the class with those who commit the act to gratify their desire. She was willing to lose her virtue if some provision was made to conceal its loss. If pregnancy does not result from the illicit intercourse, her conduct is in every respect as culpable as that of her companion. If pregnancy does result, his conduct becomes more culpable than hers when, and not until, he refuses to marry her. "

It may be said, in passing, that the defendant never refused to marry the prosecutrix. His letter from Cache, Oklahoma, to his father, shows that he desired to make amends for the wrong committed by marrying her, and there is no reason to doubt that he

would have done so had Mr. Longcrier, the girl's father, consented to the marriage. It is also shown that, prior to the trial, Mr. Longcrier's consent to the proposed marriage had been frequently requested, and as often refused. While this evidence has nothing to do with the guilt or innocence of the defendant, it nevertheless shows that he was willing to marry the prosecutrix, in keeping with his promise, and that if he did not do so the blame does not rest wholly on him.

It would be useless to go further into this case. It presents the simple, sad and not sufficiently uncommon story of a young man and girl who chose ''to enjoy the pleasures of sin for a season,'' without computing the cost or considering the consequences, excepting to agree to marry in the event of pregnancy resulting from the illicit intercourse.

Our conclusion is that the defendant's demurrer to the evidence for the state should have been sustained. The judgment is reversed, and the defendant discharged. All concur.