## HAROLD HERRIDGE V. THE STATE.

No. 16283.   Delivered January 24, 1934.
Rehearing Granted November 14, 1934.
Reported in 76 S. W. (2d) 522.

The opinion states the case.

*J. H. Baker,* of San Saba, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted for the offense of seduction, and his punishment assessed at confinement in the State penitentiary for a term of two years.

The testimony adduced upon the trial is substantially as follows:

Prosecutrix testified: "I was 17 years of age on the 20th day of January, 1933. On or about the 25th day of June, 1931, I was engaged to the defendant to be married. No definite date was set but it was our understanding that I should attend school a few more years and he intended to go to school and learn to be a mechanic. That understanding took place and continued about 8 or 9 months prior to the first act of intercourse. Our first act of intercourse took place on or about the 25th day of June, 1931, at which time I had been going with the defendant for 8 or 9 months. I would not have allowed that act of intercourse had he not promised to marry me. That was the consideration which caused me to yield to his request. In April, 1932, I gave birth to a baby girl. Harold Herridge is the father of that child." On cross-examination she testified: "Harold also said that he would stay by me if anything should happen; that if I would have intercourse with him and if anything happened he would stay with me. He said that lots of times." On re-direct examination she testified: "He told me that if I would have intercourse with him that he would stand by me and that if anything happened he would marry me before he went to school and I did submit to him."

The mother of prosecutrix testified that the defendant came to her home to see her daughter, the prosecutrix; that from the time he started going with her until some time between June 25th and July 1, 1931, she found out that they were engaged to be married. They had probably been going together over two months when the defendant asked her for the girl and she told him they could be married when they got old enough; that

they were both just children. She further testified that she did not recall the exact time, after they began going together, when defendant first asked her for the girl, but it was something like two months; that he also said, "I want you to deed me Winona"; that she head them talking together, planning what they were going to do when they got married; that they were going to live out on a ranch by themselves; that they were not planning on being married at any definite date that she knew of.

There was also evidence introduced showing that after the baby was born the defendant appeared at the home of the prosecutrix and offered to marry her if they would agree to keep it out of court, at which time the defendant saw the baby and remarked to the mother of prosecutrix, "I think Winona and I did pretty good. It is larger than I thought it would be." The State also introduced some other testimony but the above and foregoing constitutes the essential part of the testimony making the State's case. The appellant did not testify but offered some testimony indicating that the prosecutrix was an unchaste woman prior to the time of the act of intercourse charged in the indictment.

The appellant contends that the testimony shows a conditional promise; conditioned upon something happening as the result of the intercourse. It is true that if the testimony had shown unequivocally that the promise of marriage was upon a condition that something happened to prosecutrix as the result of the intercourse, then it would not justify a conviction because under such state of facts prosecutrix did not surrender her virtue upon the promise of marriage but was willing to do so regardless of any promise of marriage so long as nothing happened, and if nothing happened she did not expect him to marry her. See Simmons v. State, 114 S. W., 841, and Muhlhause v. State, 119 S. W., 868. But the direct testimony of prosecutrix makes a complete case and her re-direct testimony shows that if anything did happen as a result of the intercourse appellant was to marry her before he went to school. The issue thus raised was adequately and pertinently submitted to the jury by the court in his charge and the jury found that issue adversely to appellant.

By bills of exception Nos. 1 and 2 the appellant complains of the action of the trial court in declining to permit the defendant to introduce Francis Morgan and Rex Greenwood as witnesses and prove by said witnesses that in the month of October, 1931, the witnesses saw the prosecutrix at night in company with one Joe Rouse on the road between Llano and

San Saba trying to fix a flat tire, and at said time the said Joe Rouse and prosecutrix were both drunk and prosecutrix cursed and abused said witnesses by telling them to "get the hell away from there," to which testimony the State objected and which objections were by the court sustained and defendant excepted. We do not believe that the court committed any error in sustaining the objection of the State to said testimony in that said testimony did not shed any light upon the act of intercourse or the promise of marriage as charged in the indictment nor did it tend to refute the same, or tend to prove the want of chastity of prosecutrix.

By bill of exception No. 3 appellant complains of the action of the trial court in commenting on the conduct of the witness Mrs. Jack Herridge. It appears that during the cross-examination of the witness Mrs. Herridge the district attorney presented to said witness a number of slips of paper, one of which was written by prosecutrix and others which contained the same words written by another party or parties, whereupon the witness selected a certain slip of paper from the several so exhibited to her and stated that the said slip of paper was in the handwriting of the prosecutrix. Thereupon the district attorney propounded the further question, "You would swear that she (the prosecutrix) wrote that?," to which the witness replied, "That is her handwriting," whereupon the district attorney propounded the following question, "You say she wrote that (meaning prosecutrix)?," to which the witness replied, "I think she did," whereupon the district attorney stated, "I want to know positively," to which the defendant objected for the reason that the witness had answered the question, which objection was overruled by the court and the witness instructed to answer the question, to which the witness said, "Some of the letters look like they were written by the prosecutrix and some do not," whereupon the district attorney stated, "I want you to say positively 'yes' or 'no,' " to which defendant objected that the witness had given a complete answer to the question, to which the court replied in the presence and hearing the jury, "The court is of the opinion that this is an evasive answer."

The appellant's contention is that the remark of the court in the presence and hearing of the jury was a comment upon the weight of the evidence and an invasion by the court of the province of the jury whose duty it was to weigh the credibility of the witnesses. We do not believe that the matter complained of is of such prejudicial nature as would require a reversal of this case. It is true that article 707, C. C. P., pro-

vides: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." It is apparent from the article above quoted that any comment by the court upon the weight of the testimony or cerdibility of the witness is an infringement of the legal rights of the accused on trial. However, it was said by this court in the case of English v. State, 85 Texas Crim. Rep., 457, that it is not every comment that requires reversal for the reason that all comments are not harmful, and the question whether the judgment is to be reversed is determined not upon the language used in making the comment or the fact that the comment is made, but upon the consequence which probably results therefrom. It is not apparent from the bill of exception that the matter about which the witness was testifying related to any material issue in the case. It is true that the district atorney exceeded the latitude allowed him by the rules of evidence in his endeavor to require the witness to answer "yes" or "no" when the best the witness could do is to express an opinion from her knowledge of and familiarity with the handwriting of the prosecutrix. It is evident that the witness did not see prosecutrix write the letter and therefore could not give a direct and positive answer but could merely express her opinion. The court was also in error when he said, "This is an evasive answer" because it was not an evasive answer as the witness could only express her opinion based upon her knowledge of and familiarity with the handwriting of prosecutrix.

The court in making the remark complained of infringed upon article 707, C. C. P., yet we are forced to the conclusion that inasmuch as the witness at no time gave any testimony which was material to any defensive theory of appellant, therefore said comment on the part of the court could not have prejudiced the rights of the appellant.

No error appearing in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant's motion for rehearing presents first his complaint that the verdict is contrary to the law as submitted in the charge, and against the facts. The court charged the jury as follows:

"If you believe from the evidence that the defendant and Winona Lewis were engaged to be married at the time of the act of carnal intercourse between them, if any, but that the said Winona Lewis was not induced to have carnal intercourse with the defendant by reason of such engagement alone, if any, but that she submitted to him, if she did, relying wholly or in·part upon the conditional promise that the defendant would marry her if she became pregnant, if any such promise was made, or if you have a reasonable doubt as to this issue, you will acquit him and say by your verdict not guilty.

"You are further instructed as a part of the law of this case that if you believe from the evidence herein that the defendant and Winona Lewis were engaged to be married at the time of the act of sexual intercourse between them, if any, but that the said Winona Lewis was not induced to have carnal intercourse with the defendant by reason of such engagement alone, if any, but that she submitted to him, if she did submit to him, relying either entirely or partially upon the conditional promise that the defendant would marry her if anything happened, if any such promise was made, or if you have a reasonable doubt as to this issue you will acquit the defendant and say by your verdict not guilty."

Appellant admits this to be a correct statement of the law, and applicable,—but insists that the undisputed facts testified to by prosecutrix herself were such as that, if given effect, would have compelled an acquittal under the charge. To be exact, he claims the prosecutrix herself swore that she yielded her person to him upon his promise to marry her in case she became pregnant, and not relying alone on his promise of marriage in any case. If the testimony is all in support of this, the verdict could not stand.

These two unfortunate children were fifteen and seventeen years of age respectively when this alleged seduction occurred. According to the direct testimony of prosecutrix they had been engaged for eight months. On this point she said: "During the eight months that the defendant and I were engaged to be married there was nothing said with reference to the time that the wedding was to take place." She further testified on direct examination as follows:

"Q. Tell the jury what was said. How came you to let him have that act of intercourse?

A. Because I loved him.

Q. What did he say suggesting that? Did he make any promise to you?

A. Well he promised to marry me.

Q. He promised to marry you. Now, would you have allowed that act of intercourse had he not promised to marry you?

A. No sir.

Q. Was that in consideration of that promise to marry you that he made—by promising to marry you?

A. Yes sir."

She further said that appellant expected to go to school and thereafter make enough to enable them to get married. However, she further testified:

"It wasn't certain that we were even going to wait until he took the mechanical course and made the money for us to get married on. He did not know for sure that he was going to take the mechanical course but his father intended to send him off for that. I expected to wait until he had learned to be a mechanic.

"I did get impatinet with him about not going on and starting to work so we could get married and he would always say wait."

Asked about what appellant said when he asked her to have intercourse, she testified: "He did not come plain out; he got about it in an easy way but I don't remember just what he said; he made me understand what he wanted. I did not say 'yes' the first time he asked me; I put him off but don't remember what I told him; I don't remember what he said to me or what I said to him." Further she stated as follows: "When he talked to me on these occasions he promised to marry me—we had that in mind all of the time. Harrel also said that he would stay by me if anything should happen." In another place she swore the following:

"The night this act of intercourse took place Harrel said the same thing to me as he had said before—that he would stay with me if anything should happen and we would be married before he went to school—before his father sent him to school; that is about all he said that I remember.

Q. Let's see if I get you right. He told you that if you should have intercourse with him that he would stand by you?

A. Yes sir.

Q. And that if anything happened he would marry you before he went to school?

A. Yes sir.

Q. That is what he told you?

A. Yes sir."

Again she testified like this: "I told him if he would agree to marry me before he went to school if anything happened that I would submit to him and I did submit to him there at my home."

We have carefully considered this testimony in the light of the decisions. Spenrath v. State, 48 S. W., 192, was a case in which prosecutrix testified that the accused had intercourse with her several times, each time on a promise to marry her. The occasion forming the basis for the prosecution occurred in Kerr County, and she said that on this occasion he promised her that if anything happened to her he would marry her right away, but if not he would marry her sometime after Christmas. This court said: "We do not believe that our statute, making seduction an offense, was intended to cover acts of mere illicit intercourse between a man and woman under the age of 25 years, and to be used, in case something should happen on account of the illicit intercourse, to constrain the man guilty of illicit intercourse to marry the female."

In Simmons v. State, 54 Texas Crim. Rep., 627, we said: "If she simply agreed to have carnal intercourse with appellant under a conditional promise of marriage, the condition to happen in the future, predicated upon a possible or probable pregnancy, this would not be seduction. Under the testimony of the prosecutrix the question is squarely raised that she submitted to his importunities because of his promise to marry her if anything got wrong and she became pregnant. This promise was conditioned on an event which might never occur, and as said in the Putman case, supra, it is more in the nature of a contract or bargain and barter, than one of betrayal of confidence."

In People v. Smith, 132 Mich., 58, 92 N. W., 776, the Supreme Court of Michigan says: "Is a promise to marry, conditioned upon the illicit intercourse resulting in pregnancy, calculated to induce a pure woman to yield her chastity? In our judgment, the question admits of but one answer. Such a promise has no tendency to overcome the natural sentiment of virtue and purity. The woman who yields upon such a promise is in no better position than as though no promise whatever has been made. No wrong is done her if she is put in the class with those who commit the act to gratify their desire. She was

willing to lose her virtue if some provision was made to conceal its loss. If pregnancy does not result from the illicit intercourse, her conduct is, in every respect, as culpable as that of her companion. If pregnancy does result, his conduct becomes more culpable than hers when, and not until, he refuses to marry her."

In State v. Thomas, 132 S. W., 225, the Supreme Court of Missouri held as follows: "According to the testimony of the prosecutrix, the promise made by the defendant was that he would marry her if he got her in trouble. In other words, the promise of marriage was conditioned upon the act resulting in pregnancy. Such is not the promise mentioned in the statute, and it constitutes no element of the offense. Under the statute, it is not seduction if the female submits her person to the other party in reliance upon his special and conditional promise to marry in the event of pregnancy."

In Putman v. State, 29 Texas App., 454, we quoted with approval the following: "No one can, with any degree of plausibility, contend that a virtuous female could be seduced without any of those arts, wiles, and blandishments so necessary to win the hearts of the weaker sex. To say that such a one was seduced by simply a blunt offer of wedlock in futuro, in exchange for sexual favors in praesenti, is an announcement that smacks too much of bargain and barter and not enough of betrayal. 'Tis hire or salary, not seduction.'"

In the case before us, as we understand it, prosecutrix did not yield herself to appellant on his unconditional promise to marry her,—that being the condition predicate laid down in article 505, P. C. He had promised to marry her, and often renewed that promise in connection with his efforts to induce her to have intercourse with him, but without success. She testified that he first approached her about this in May. He talked to her about it afterward, but she did not remember the times or what was said, save that when he talked to her on these occasions he promised to marry her, but she did not yield. What then induced her to yield on the occasion in question? Let her answer for herself: "I told him if he would agree to marry me before he went to school, if anything happened, that I would submit to him, and I did submit to him." In other words, appellant had promised to marry her at some indefinite future time, described and describable only as "After he had gone to school," an event which might never, and in fact has never taken place. He urged her to have intercourse.

She seems to have argued that something might result from such act, but finally told him "I will submit upon your promise that in such event you will marry me BEFORE YOU GO TO SCHOOL," a proposition almost entirely indefinite. If we are able to reason this out, she offered him her body in consideration of his promise to marry her if she became pregnant. If the contingency agreed upon should not happen, the contract to marry her before he went off to school failed. If it did happen, then he was to marry her before he went to school. This is almost the exact agreement testified to by the prosecutrix in the Spenrath case, supra, and seems clearly to fix that intercourse depended upon, and was granted upon a conditional promise of marriage in case of pregnancy.

If the proposition was sound in the Spenrath case, it must be so here. If what we said in the Simmons case, supra, viz: "If she simply agreed to have carnal intercourse with appellant under a conditional promise of marriage, the condition to happen in the future, predicated upon a possible or probable pregnancy, this would not be seduction," is sound there, how can we escape its soundness and application here where the prosecutrix testified that she said: "I will agree to intercourse, if you will agree to marry me before you go off to school, in the event of pregnancy," a future contingency!

The logic of the proposition is well set out in the Smith case, supra, as follows: "If pregnancy does not result from the illicit intercourse, her conduct is in every respect as culpable as that of her companion." She barters herself for a promise of immediate marriage,—putting the best possible construction on her bargain,—in exchange for self-surrender. If pregnancy does not result, she loses her virtue, as well as prospect of speedy marriage. This is not that loving trust in him to whom a woman has committed her whole heart and future upon his profession of love and promise to marry, as a result of which and in reliance upon which he leads her astray, but is a calculation, a bargain, an offer of a consideration and its acceptance upon a condition not named in our law, and which seems at variance with what is meant by seduction in our Penal Code. We are of opinion that this jury, as many and most good men might be, were influenced by sympathy for this unfortunate child, and a desire to punish her betrayer to the extent that they went beyond the allowance of the law in holding this accused guilty.

We think the appellant's motion for rehearing should be

granted, the affirmance set aside, and the judgment of the trial court reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

HAWKINS, JUDGE.—We are not to be understood as holding that in no case would a conviction for seduction be sustained in the absence of a fixed date for the marriage. This would necessarily depend on the facts of the particular case. We have reached the conclusion that in the present case the finding of the jury was against the undisputed evidence from the State's own witness supporting the defensive issues as submitted by the court, and set out in the beginning of this opinion. With this explanation, I concur in the judgment of reversal.