MOLLIE ERWIN, Respondent, v. A. M. JONES, Appellant.

Springfield Court of Appeals, January, 28, 1916.

1. SETTLEMENT BY COMPROMISE: Elements Essential to Bar Original Cause: Accord, and Satisfaction. Plaintiff and defendant entered into an agreement to settle differences caused by defendant having broken his promise to marry plaintiff. Part of the agreed sum was paid. Later plaintiff returned the amount paid, repudiated the agreement and refused to accept the balance. The agreement did not bar the original cause of action because both accord and satisfaction must enter into such agreement to render it such a bar.

2. ACCORD AND SATISFACTION: Executed and Executory Agreements. In order that there be satisfaction of an accord, the agreement must be executed. A mere executory accord is insufficient to sustain a plea in bar to the original cause of action. The rule is not affected by a part performance.

3. MARRIAGE CONTRACTS: Breach of: Mutual Promises: When Promise Implied. Marriage contracts, like others, must contain promises by both parties. However it is not necessary to establish the contract by an express promise. Promise may be implied from acceptance of promise of the other party.

4. ————: ————: Promise: Request to Fulfill. In an action for a breach of a marriage promise testimony reviewed and *held* that there was some evidence of a request of defendant to fulfill his promise.

Erwin v. Jones.

5. ———: Consideration Immoral: Courts Will Not Enforce. Where a promise to marry is bartered for the act of yielding to illicit sexual intercourse the courts will not enforce the contract because it would be against public policy to do so.

6. ———: ———: When Not. Where the sexual intercourse is not the consideration for the promise of marriage, though the woman did yield to sexual intercourse with the man in reliance on his promise to marry her, the contract is not immoral.

7. ———: Breach: Immoral Consideration. In an action for breach of promise of marriage, even though sexual intercourse may have been the original consideration for the promise, yet if there was afterwards another promise independent of the intercourse, the plaintiff may recover for defendant's breach.

8. SEDUCTION: When Action Will Not Lie: Promise of Marriage as a Consideration. Damages for seduction cannot be recovered where sexual intercourse was indulged in under an agreement that if plaintiff would yield, defendant would marry her, though, subsequently, there was an agreement to marry independent of such intercourse.

9. MARRIAGE PROMISES: Breach: Evidence: Reviewal. Action for breach of promise of marriage, the defendant contending that sexual intercourse was the sole consideration for the promise, hence the same was immoral and not binding. Evidence reviewed and considered sufficient to justify submission of the issue as to subsequent recognition of the contract by defendant.

10. APPELLATE PRACTICE: Reviewing Evidence: Inferences. Where defendant in an action for breach of marriage contract did not testify or deny in any way plaintiff's evidence, the plaintiff is entitled to every reasonable inference deducible from her evidence to support the verdict.

11. INSTRUCTIONS: Harmless Error: Breach of Marriage Promise: Damages. An instruction as to damages for breach of promise to marry examined and considered harmless, even if erroneous, in view of the evidence.

12. MARRIAGE PROMISES: Breach of: Damages: Financial Standing of Parties. Action for breach of promise of marriage. Testimony as to the pecuniary standing of the parties is admissible.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. Howard Gray*, Special Judge.

AFFIRMED.

*W. Cloud* and *I. V. McPherson* for appellant.

*Theodore Alvord* and *Mahew & Sater* for respondent.

FARRINGTON, J.—The plaintiff recovered a judgment against defendant for $3500 on account of damages occasioned by a alleged breach of contract to marry her. No point is made on the petition.

The defendant for answer filed a general denial, coupled with the following special plea which he calls "Accord and Satisfaction:" "Further answering the said petition, defendant says that on September 6, 1913, long after the happening of the transactions referred to in plaintiff's petition, all demands, claims and differences then existing between the plaintiff and the defendant were compromised and settled between them and that all the claims and demands mentioned and sued on in plaintiff's petition were settled and compromised by a contract of compromise and settlement made and entered into by and between the plaintiff and the defendant by which said contract, in consideration of the sum of one hundred dollars, the plaintiff agreed to compromise and settle all said claims, demands and causes of action sued on in this suit and agreed to receive and accept the said sum in full satisfaction of all the claims and demands sued on in this action and which she then had or might have against the defendant; that by the said contract the defendant bound himself to pay plaintiff, in consideration of said settlement and compromise agreement of all the said claims and demands and differences existing between himself and the plaintiff, the said sum of one hundred dollars and then and there paid the plaintiff thereon the sum of ten dollars; that the remainder of said sum was to be paid to plaintiff on demand; that defendant thereafter tendered plaintiff the balance of the said sum and she refused and still refuses to accept the same; that plaintiff has ever since been

and he is now ready and willing to pay plaintiff the remainder of said sum and tenders the same into this court for her benefit; that plaintiff still retains the said sum so paid her on said settlement and compromise agreement; that at the time of entering into said settlement and compromise agreement and upon defendant paying plaintiff the said sum of ten dollars, and promising to pay her the remainder thereof on demand, the plaintiff executed in writing and delivered to defendant her acknowledgement of satisfaction and release of defendant for all the claims and demands she then had against the defendant for all differences existing between them, including all the demands and causes of action sued on in this petition. Wherefore defendant says, if the plaintiff ever had any cause of action, claim or demand against the defendant on account of the matters and things alleged in her petition, the same are compromised and settled and are no longer the subject of an action between them and the defendant has been discharged and released from all liability on account thereof.''

The reply of the plaintiff admitted that there was an agreement entered into between plaintiff and defendant whereby she was to receive one hundred dollars in lieu of all damages sustained by her by reason of the breach of defendant's promise to marry her, and that ten dollars was paid on such compromise agreement, but that before the balance was paid the ten dollars was returned to the defendant and the compromise repudiated.

Plaintiff signed a writing, referred to in the evidence as a receipt and release, which on its face acknowledges the receipt of one hundred dollars paid. The fact is, however, as shown by the receipt set forth below as well as by the allegation in defendant's answer, that the one hundred dollars was not paid, but that only ten dollars passed between them.

The receipt and release, so called, is as follows:

"There being certain differences now existing between A. M. Jones and myself in regard to former relations between us—" now in consideration of the sum of one hundred dollars to me paid by A. M. Jones, I hereby accept the same in full satisfaction of any and all claims I may have against him. This Sept. 6, 1913.

"MARY ERWIN."

The receipt is as follows:

"$10.00          Wentworth Mo. Sept. 6, 1913.

"Received from A. M. Jones, ten &......no/100, Dollars, part payment on agreement of Sept. 6, 1913.

"MARY ERWIN."

We will take up the points pressed upon us for a reversal of this judgment and discuss the facts in connection therewith.

It is insisted that the court should have rendered judgment for the defendant on the pleadings in that defendant's special plea was a plea of accord and satisfaction and that plaintiff's reply admitted an accord and satisfaction. This point is not well taken because the special defense set up in the answer is not such as in law amounts to a plea of accord and satisfaction. It goes no farther than to aver that plaintiff and defendant did agree to compromise and settle their differences and that that agreement was that ten dollars should be paid down, which was done, and that the balance of ninety dollars was to be paid on plaintiff's demand, and that after having paid the ten dollars and before the ninety dollars was paid, plaintiff refused to accept any further sum under the compromise agreement, and that defendant has ever been ready and willing to pay the remainder of said sum. This plea amounts to no more than an averment of an accord and on its face lacks the element of satisfaction. Both accord and satisfaction must enter into such agreement to be a bar to the original cause of action. [Crouch v. Quigley, 258 Mo. 651, 167 S. W. 978; Carter v. Railroad, 136 Mo. App. l. c. 724, 119 S. W. 35; Vining v. Fire Ins. Co., 89

Mo. App. 311; Giboney v. German Ins. Co., 48 Mo. App. 185; Goff v. Mulholland, 28 Mo. 397; Russell v. Lytle, 6 Wend. (N. Y.) 390; Hunt on Accord and Satisfaction, sec. 3.] The cases cited hold that in order that there be satisfaction of an accord the agreement must be executed, that a mere executory accord is insufficient to sustain a plea in bar to the original cause of action, and that this rule is not affected by a part performance. The plea of defendant shows on its face that only ten dollars had been paid on the agreement before a repudiation took place, and there is no averment in the answer that there was an express stipulation to accept the new promise as a discharge of the previous liability.

It would seem that, under the rule declared in the cases of Gerhart Realty Co. v. Northern Assurance Co., 94 Mo. App. 356, 68 S. W. 86, and Curtis v. Browne, 63 Mo. App. 431, where the evidence clearly shows that the new promise will be taken in full discharge and accepted as satisfaction or payment of the original cause of action, then, although the new agreement has not been carried out, it will work an accord and satisfaction. [See, 1 R. C. L., secs. 35 and 36.]

We are cited by appellant to the case of Putnam v. Boyer, 173 Mo. App. 394, 158 S. W. 861, and similar cases. There, the receipt and release were given and the full amount of the settlement actually paid and the compromise executed, while here the pleadings of both parties and the uncontradicted evidence of the plaintiff show that only ten dollars was actually paid. The plaintiff returned the ten dollars which was paid, together with interest, by sending defendant a postoffice money order for $10.50. In her letter in which she sent it she spoke of it as a loan, but she testifies that it was the ten dollars he paid her on this compromise, and so far as this record shows the defendant retained the money order.

Under no view can the answer in our case be held to be a good plea of accord and satisfaction—such as would have justified the circuit court in rendering judgment for defendant thereon, nor was the plea sufficient to warrant the submission of that issue to the jury.

Appellant contends that the contract to marry in this instance was not mutual and cites the cases of Standiford v. Gentry, 32 Mo. 477, and Hudson v. Browning, 264 Mo. 58, 174 S. W. 393, which hold that marriage contracts, like other contracts, must contain mutual promises—promises by both parties. One of the instructions given in our case required the jury to find that plaintiff and defendant had mutually agreed to marry before returning a verdict for the plaintiff. It is not necessary, however, to establish the contract by an express promise. [Cole v. Holliday, 4 Mo. App. l. c. 98; 5 Cyc. 999.] If the defendant promised to marry the plaintiff, her relations with him thereafter were such that it might be reasonably inferred that she accepted his promise and such an acceptance would necessarily imply a promise on her part. The law does not required that a useless tender be made. The plaintiff testifies that she asked the defendant "what he was going to do with her," and that he replied that he "wasn't going to do anything." This is some evidence of a request on him to fulfill his agreement prior to the institution of this suit. Besides, plaintiff avers in her petition that she is ready and willing to marry the defendant, and he could easily have abated this action had his only reason for refusing to marry her been that he was waiting for a request on her part.

Appellant contends that the evidence of plaintiff conclusively shows that the sole consideration for the promise made by him was based on an immoral act and that the policy of the law is to not enforce contracts made under the circumstances disclosed by the evidence in this case. The first time (according to plaintiff) that defendant promised to marry her was on July 1,

1912, and she says that on that evening she refused to yield her body to him until he had promised to marry her, and that on that occasion defendant forced her to have sexual intercourse with him, which of course would preclude the idea of any promise. As to the latter proposition, that he forced her to yield to him, while she does use that term, her whole testimony as to her actions and his actions, before, at the time of, and after the sexual intercourse took place on July 1, 1912, all precludes the idea that defendant ravished her on that occasion. No judge or jury, on the testimony given would find that defendant used unlawful force in obtaining his desires. Courts and juries take into consideration traits common to the human family, one of which is that the female seeks excuses to justify her conduct in the event of exposure of illicit sexual intercourse. We will not presume that plaintiff's excuses in that respect deceived a sensible jury, or that the jury was inflamed against the defendant on that account.

On the other hand, the cases cited by appellant uphold the doctrine that where the promise to marry was bartered for the act of yielding to illicit sexual intercourse, such contracts will not be enforced by the courts—this, of course, on the ground of public policy. [State v. Reeves, 97 Mo. l. c. 676, 677, 10 S. W. 841; State v. Howard, 264 Mo. 386, 175 S. W. 58, 60; State v. Thomas, 231 Mo. 41, 132 S. W. 225.]

In this case while it may be admitted that the evidence does very strongly tend to show that on July 1, 1912, plaintiff only submitted to the defendant in consideration of his promise to marry her, we cannot say that it conclusively shows this, but that it may be open to inference that relying on his promise to marry her she gave up her body to him; we think the evidence is such as to warrant the latter inference, and, if so, the case falls within the rule announced in the case of Powell v. Moeller, 107 Mo. 471, 18 S. W. 884, wherein the plaintiff testified (according to appellant's brief in the

report of the case), "I allowed Moeller to have intercourse with me, because he promised to marry me," and where the court said: "The defendant seeks to reverse the judgment on the ground that the contract was an immoral one. The contract was to marry. It was not only not immoral, but was one favored by the law, and based upon the most valuable of considerations. If by virtue of this promise defendant succeeded in perpetrating a great wrong on plaintiff it does not lie in his mouth on that account to impeach the validity of the contract. There is no merit or virtue in his point."

Aside from this we hold that there is sufficient testimony in this record from which it may reasonably be inferred that there was a contract between the parties to marry and that the defendant at various times after July 1, 1912, and at times where it was not shown that there was an immoral consideration present, recognized that he was under contract to marry this plaintiff. We have not been cited any case and do not know of any holding that parties who have entered into a contract to marry, void because of an illegal consideration, are on that account forever barred from making a further agreement to marry which is supported by a lawful consideration. In fact, a man who has prevailed upon a woman to yield her body to him resulting in pregnancy is under a moral obligation to then marry her.

The learned special judge who presided at the trial of this case—learned not only in the law but as well in the philosophy of life—submitted the following instruction to the jury.: "The court instructs the jury that although you may find and believe from the evidence that the first time the defendant had sexual intercourse with the plaintiff, it was under an agreement, that if she would yield he would marry her, yet if the jury further find from the evidence that afterwards there was an understanding and agreement between the plaintiff and defendant, independent of such act of intercourse, that they would marrry each other, and at

said time both were single and unmarried and that defendant refused to carry out such agreement to marry plaintiff, then the finding in this case should be in favor of the plaintiff, but she should not be allowed any damages for seduction." That instruction correctly declares the law; and the evidence which we think justified its submission is as follows: Plaintiff testified that July 1, 1912, was the first time that plaintiff promised to marry her. She was then asked how often defendant repeated the promise and she answered that "he spoke of it several times; I could not say how many." It is shown that for several years the defendant paid much attention to this plaintiff, taking her places and calling on her in her home. She was also asked: "Q. What further talk did you have with him about marrying?". Her answer was: "Well, we talked several times about it. He asked me one time if I wouldn't rather go to town and not live on the farm. He said I would have to work hard and if I would go to town the work would be easier on me, and I told him I didn't like town and didn't want to go to town." Continuing: "Q. About when was that, Miss Mollie? A. That was along in July.' Q. Can you tell any other time you had a talk with him about marrying? A. No, not to be perfect with it. He spoke several times. Q. What did you say? A. We talked it over several times. . . . . Q. Anything else he said to you about marriage? A. Yes, we was talking about it before the baby was born. Q. Is that the next conversation you remember? A. I remember this. Q. Tell us the next one you remember? A. That is it. Q. What was said at that time? A. He says, 'I hope they will be twin boys.' Q. Speaking of your pregnancy? A. Yes, sir. Q. What else did he say? A. He says, 'I would love to come in and find you saying, hush up, baby, papa will be home directly.' We was talking about marrying then." This all clearly tends to show that the defendant without any illegal consideration at those times conducted himself

toward the plaintiff in such a manner that the jury might well have drawn the inference that he was under a contract to marry her.

Defendant did not see fit to take the stand to refute or deny any of plaintiff's evidence but stands on what she says is true, and her evidence is entitled to every reasonable inference that can be deduced therefrom in support of the verdict.

The court also gave the following instructions:

"1. The court instructs the jury that if you find and believe from the evidence that the plaintiff and defendant on or about July, 1912, were each single and unmarried, and about said time they mutually agreed to marry each other, and that in said agreement no time was fixed for its consummation, then the law contemplates that the same was to be consummated within a reasonable time; and if you find that afterwards and within such reasonable time the defendant refuses to consummate such agreement and that the plaintiff was at all times ready and willing to marry the defendant, then the finding should be for the plaintiff."

"3. The court instructs the jury that if you find a verdict in favor of the plaintiff, then in assessing her damages you may take into consideration, as it may appear from the evidence, her lack of independent means, her mortification and injured feelings, if any, caused by the defendant's refusal to marry her; her loss of marriage; and her altered social position, if any, caused by defendant's conduct; and the support and maintenance of said child as well as the financial ability of the defendant; and assess her damages at such sum as you may believe will compensate her, not to exceed the sum of ten thousand dollars."

Appellant complains that the jury was permitted in instruction No. 3, which fixed the measure of damages, to allow plaintiff for maintenance of the child when by instruction No. 1 the jury was not required to find the fact that there was a child by this defendant.

The evidence shows conclusively, in our judgment, that the defendant is the father of plaintiff's child, and if the failure to require such a finding was error, it could not be reversible error in this case. [See, Schmitz v. Railway Co., 46 Mo. App. l. c. 392, 393; Rice v. McFarland, 41 Mo. App. l. c. 494, 495, 496.] No one on reading the instruction on the measure of damages, except a defeated defendant grasping at straws, would ever think that the jury would be permitted to allow damages against defendant for the maintenance of some other man's child—a child other than the one which the evidence shows was begotten by this defendant.

It was not error to admit testimony in this character of case showing the pecuniary standing of the parties. [Fisher v. Oliver, 172 Mo. App. 18, 154 S. W. 453.] The evidence showed that defendant was worth from eight thousand to nine thousand dollars. The jury returned a verdict for five thousand dollars and the trial judge required a remittitur of fifteen hundred dollars which was entered by plaintiff and the judgment was then rendered for thirty-five hundred dollars.

Other points in appellant's brief not necessarily disposed of by what we have said have been examined and are overruled.

Judgment is affirmed.

*Robertson, P. J.,* and *Sturgis, J.,* concur.