**PATHWAY FINANCIAL, a Federal Assoc., Plaintiff–Respondent,**

v.

**L. Dan SCHADE & Carol G. Schade, Defendants–Appellants.**

No. 56037.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 12, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied
Sept. 11, 1990.

Arthur A. Hogg, Robert P. Baine, Jr., Clayton, for defendants-appellants.

Philip B. Sachs, Clayton, for plaintiff-respondent.

SATZ, Presiding Judge.

This is an action on a promissory note. Defendants, Mr. and Mrs. Schade, husband and wife, are the makers of the note, and plaintiff, Pathway Financial (Pathway), is the payee.[1] Defendants appeal from the trial court's grant of summary judgment in favor of plaintiff. We affirm.

On April 26, 1982, defendants executed the promissory note in issue as payment for a four week time share period, each year, in a condominium in Crested Butte, Colorado. Defendants defaulted on the note. Plaintiff sued defendants on the note for damages of some $45,000.00 in principal and interest and for attorney's fees and costs.

In their answer, defendants denied the material allegations of the petition and asserted the affirmative defense of fraud. In addition, defendants counterclaimed, alleging the fraud of plaintiffs induced them

---

**1.** Crawford Savings and Loan Association is the actual payee on the note. Pathway is the suc- cessor association to Crawford.

into signing the note and prayed for a judgment against plaintiff in the amount of $100,000.00.

Settlement negotiations followed. Believing a settlement had been reached and then breached, defendants filed a motion to enforce the settlement. A hearing was held, and the trial court denied defendants' motion. Defendants filed an amended answer, adding the affirmative defense of settlement.

Plaintiff then filed its motion for summary judgment, supported by portions of the depositions of defendants and by an affidavit of Ms. Andrea Towson, Assistant Vice President of plaintiff. Defendants' response was an affidavit of Mrs. Schade purporting to establish the settlement agreement and allegations that the note had been procured by fraud.

Defendants also filed a motion styled "Motion for Summary Judgment, Or, In The Alternative, Motion To Dismiss." These motions were supported by the affidavit of Mrs. Schade and unsworn allegations.

The trial court granted plaintiff's motion for summary judgment and denied defendants' motions. Defendants' appeal followed.

### Plaintiff's Motion to Dismiss Appeal

Plaintiff has filed a motion to dismiss the appeal, arguing that defendants are appealing from a judgment which is not final. Plaintiff's argument is twofold.

■ Plaintiff first argues that defendants' counterclaim for fraud is still pending below and, thus, no final judgment disposing of this claim has been entered. Defendants respond that there is no qualitative difference between their allegations of fraud in their affirmative defense and their allegations of fraud in their counterclaim. Thus, defendants reason, since the trial court found no fraud as an affirmative defense, the court implicitly decided the counterclaim, based on fraud, as well.

We are intrigued by the relevant positions of the parties. Plaintiff argues a claim against it is still pending, and defendants argue that claim has been implicitly ruled against them. In any event, finality is a jurisdictional issue. *E.g. Citizens Elec. Corp. v. Campbell*, 696 S.W.2d 844, 845 (Mo.App.1985). We address it and agree with defendants. The trial court's grant of summary judgment contains an implicit ruling against defendants on their counterclaim.

The allegations in defendants' counterclaim substantially track the allegations in their affirmative defense. Defendants asserted their affirmative defense of fraud in opposition to plaintiff's motion for summary judgment. Therefore, in granting plaintiff's motion for summary judgment on the record before it, the trial court necessarily determined there was no genuine issue of fact about fraud. Since the summary judgment effectively disposed of the issue of fraud, the judgment was final and appealable. *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 351 (Mo.App.1980).

Normally, we would be reluctant to extend this principle to the present case. As applied here, the principle determines the judgment on the counterclaim even though the counterclaim is not mentioned. The judgment which disposes of the counterclaim issue of fraud is a summary judgment. Thus, defendants are deprived of their day in court on their counterclaim without explicit notice that a summary judgment on their affirmative defense of fraud would, in effect, be res judicata on that issue as raised in their counterclaim.

Admittedly, defendants will not have another opportunity to prove their allegations of fraud in their counterclaim. However, defendants are the parties against whom summary judgment has been granted, and it is they who argue the preclusive effect of the summary judgment. Therefore, we assume they had nothing more to offer the trial court than they did. Consequently, the summary judgment effectively disposed of the issue of fraud in the defendants' counterclaim.

■ Plaintiff also argues the order denying defendants' motion to enforce settlement is not a final order and, thus, not

appealable. As we discuss later, the denial of that motion can be considered to be an adjudication of the issue of settlement under the doctrine of the law of the case. That does not automatically make the denial final for purposes of appeal. Rule 74.01. Arguably, the trial court could have made the denial final for purpose of appeal under Rule 74.01. We do not reach that issue here. On this record, the denial of defendants' motion was interlocutory for purpose of appeal, and, as such, it may be reviewed as part of an appeal taken from the final judgment which follows. *Lancaster v. Simmons*, 621 S.W.2d 935, 940 (Mo. App.1981). Defendants are now appealing the final judgment of the trial court, and, as a part of that appeal, they challenge the trial court's denial of their motion to enforce settlement. This appeal is, thus, properly before us.

### Defendants' Arguments

■ Defendants argue the trial court erred in denying their motion to enforce settlement. Defendants argue the unrefuted testimony of Mrs. Schade established an offer of settlement, the terms of the offer and plaintiff's acceptance.[2] We disagree.

We review the trial court's hearing and denial of defendants' motion to enforce the settlement agreement as we review other court tried issues: under the well known principles established by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and Rule 73.01(c). *Barton v. Snellson*, 735 S.W.2d 160, 161 (Mo.App.1987). We defer to the credibility determinations made by the trial court, and we accept as true the evidence and permissible inferences favorable to the prevailing party and disregard contrary evidence and inferences. *E.g. Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App.1986).

■ Two witnesses testified at the hearing on the motion to enforce settlement: Mrs. Schade for defendants, and Ms. Towson for plaintiff.

To support their argument, defendants select the following testimony of Mrs. Schade. Mrs. Schade did not dispute the execution of the note for $30,000.00 for a four week time share interest in the condominium. According to her testimony, however, in a letter dated March 7, 1988, some five months after defendants' original pleadings had been filed, defendants' counsel mailed a written offer to settle to plaintiff's counsel:

> [Defendants] are willing to pay ... Pathway Financial, $30,000 in exchange for the entire condominium unit, a full fifty-two-week interest.

Subsequently, a date for the taking of defendants' depositions was set, and, when defendants and their attorney appeared for the depositions, plaintiff's counsel told them the $30,000.00 offer "was entirely too low." After a private conference with their attorney, defendants "offered fifty thousand", and plaintiff's counsel "asked if we could have the money in thirty days, and we said yes."

Also, according to Mrs. Schade, plaintiff's counsel called the home office and he "communicated the new offer and subsequently ... indicated to [Mrs. Schade] and [her] husband the offer was, in fact, accepted." "... [H]e told [plaintiff] we were willing to raise our bid from thirty to fifty thousand for full ownership." More specifically, she said the offer communicated by plaintiff's counsel was "adequately and clearly reflect[ed]" in a letter from her counsel to plaintiff's counsel, dated April 27, 1988, "the next day". This letter set out defendants' understanding of the offer as plaintiff's counsel transmitted it by phone to plaintiff:

> The Schades will pay to Pathway Financial Services within thirty days the sum of $50,000.00, after which Pathway Financial Services will deliver a deed to the Schades for the condominium in question for the entire fifty-two-week interval free and clear.

2. In their Point, defendants also rely on the affidavit of Mrs. Schade. The affidavit is dated October 3, 1988. The trial court denied defendants' motion on June 21, 1988. The affidavit obviously was not before the court when it denied the motion, and, thus, we do not consider it in this Point.

Defendants also add that, during cross-examination, Ms. Towson, plaintiff's Vice President, said she did not "deny" the "offer was made by the Schades for a full fifty-two-weeks." Viewed most favorably to defendants, this testimony does establish defendants' offer and plaintiff's acceptance.

Defendants' selection of this testimony, however, turns our scope of review on its head. This testimony, if believed, establishes facts most favorable to defendants and supports inferences drawn most favorably to them. Moreover, the only proof of plaintiff's acceptance of defendants' offer is Mrs. Schade's testimony that plaintiff's counsel "indicated to [her] and [her] husband the offer, was, in fact, accepted." But, the trial court determines credibility, and, thus, it could, and arguably did, disbelieve this part of Mrs. Schade's testimony, whether it was refuted or not. *E.g. Intertherm, Inc. v. Coronet Imperial Corp.*, 558 S.W.2d 344, 348 (Mo.App.1977).

Furthermore, defendants receive no support from Ms. Towson's testimony. She never said, explicitly or implicitly, that she accepted defendants' offer. Her failure at the hearing to deny the terms of defendants' offer rests in the following context:

[Defendant's Attorney] You do not deny the offer was made by the Schades for a full fifty-two weeks, do you?

[Ms. Townson] No, I do not deny it.

Q. You do not deny the terms of the settlement offer?

A. I think there was a settlement offer made, *I think the term used was a deed ... our intention was a Quitclaim Deed and they were talking about a deed from us for the whole unit.* (emphasis added)

No factual or legal acceptance is found in that testimony.

Defendants had the opportunity to cross-examine Ms. Towson further. They did not do so. Moreover, defendants neither deposed nor called plaintiff's counsel as a witness to testify to what he believed he said to defendants and their counsel during or after his phone conversation with Ms. Towson. Defendants had an opportunity

to make their record before the trial court. On appeal, we must take that record as we find it and so must defendants. *Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 524 (Mo.App.1980).

■ Defendants also argue the trial court erred in granting plaintiff's motion for summary judgment. Defendants' argument is twofold.

Defendants first argue they pleaded the affirmative defenses of fraud and settlement in their amended answer and plaintiff failed to resolve those pleaded issues in its motion for summary judgment. Defendants' argument is misdirected and, thus, misses the mark.

Plaintiff supported its motion by an affidavit of Ms. Towson and admissions contained in the defendants' depositions. This evidence established defendants' execution of the note, defendants' default, plaintiff's demand and plaintiff's damages caused by defendants' default. This supports the trial court's grant of summary judgment in favor of plaintiff.

Plaintiff is not required to negate either the denials or the affirmative defenses alleged by defendants in their answer. To oppose plaintiff's properly supported motion for summary judgment, defendants may not rely on their unverified allegations in their pleadings. They must rely on verified facts to show there is a genuine issue of material fact for trial. Rule 74.04(e); *Commerce Bank of Fenton v. B.P.J. Enterprises, Inc.*, 659 S.W.2d 615, 617 (Mo. App.1983).

■ Defendants also argue the affidavit of Mrs. Schade filed in opposition to plaintiff's motion raises genuine issues of material facts. Mrs. Schade's affidavit raises the issue of the settlement agreement. In general terms in her affidavit, she states defendants' $50,000.00 offer and the fact of defendants' presence "when counsel for the Plaintiff contacted the Plaintiff and obtained authority to settle the case under the terms as described."

The filing of Mrs. Schade's affidavit was simply an attempt to relitigate the settlement issue; an attempt which the trial

court, within its discretion, could decide was barred under the doctrine of the law of the case.

The doctrine of the law of the case permits a decision on an issue of law made at one stage of a case to become binding in successive stages of the same litigation. 1 B *Moore's Federal Practice* § 0.404[1], p. 117 (2 ed. 1988). In Missouri, at the appellate level the doctrine is simply a rule of policy and convenience, a concept that requires discretion. *See, e.g. In re Marriage of Quintard,* 735 S.W.2d 388, 390 (Mo.App. 1987).

In some jurisdictions, the doctrine is applied at the trial level, and, at that level, it is likewise a discretionary doctrine. *Moore, supra* at 118 and § 0.404 [4.–1]. It does not limit the power of the trial court to change interlocutory orders at any time prior to entry of final judgment. *Id.·* at 124.

At the trial court level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment. Prejudgment orders remain interlocutory and can be reconsidered at any time, but efficient disposition of the case demands that each stage of the litigation build on the last, and not afford an opportunity to reargue every previous ruling. *Id.* at 118.

.     .     .     .     .

[T]he doctrine of the law of the case as applied to successive prejudgments of the trial court, is not a rule to perpetuate error and does not require a court to enter an erroneous judgment because the logic of an earlier erroneous ruling would require it. It is merely a practice that protects the ability of the court to build to its final judgment by cumulative rulings, with reconsideration or review postponed until after the judgment is entered. *Id.* at 126.

Neither our research nor that of the parties has disclosed the express use of this doctrine in Missouri at the trial level. However, we find it was implicitly used by the trial court here and properly so.

We have no Rule defining the process for enforcing an agreement settling an impending case. One court approved procedural device, used here, is a motion to enforce settlement. *E.g. Barton v. Snellson, supra* at 161. The motion, "in effect, adds to the pending action a collateral action seeking specific performance of the agreement." *Landmark Bank v. First Nat'l. Bank in Madison,* 738 S.W.2d 922, 923 (Mo.App.1987).

Here, defendants were granted a full hearing on their motion before the trial court denied it. Subsequently, defendants amended their answer to add the affirmative defense of settlement praying for the alternative reliefs of "compel[ling] the settlement" or the dismissal of plaintiff's claim. This added "affirmative defense" of settlement, with request for alternative relief, added no new issues to the then pending action.

For our purposes here, we assume defendants correctly characterize these allegations of settlement as an affirmative defense, even when the allegations are coupled with the request for the affirmative relief of compelling the enforcement of settlement. This relief, in effect, seeks the equitable relief of specific performance. *Landmark Bank, supra* at 923. Certainly, then, the trial court would have had the power to try this equitable issue prior to trying the legal issues raised by plaintiff's petition. *E.g. State ex rel. Rope v. Borron,* 762 S.W.2d 427, 429 (Mo.App.1988). Then, if the equitable defense were sustained, final judgment could have been entered for defendants on all issues. But, if the defense were not sustained, plaintiff's claim would have stood ready for trial at law.

In effect, this is what took place below. Defendants were given the opportunity for a full hearing on their motion to enforce settlement, and it was denied. Plaintiff's claim was then ready for trial and was disposed of by summary judgment. The trial court used common sense and implicitly refused to give defendants another identical opportunity to prove the issue of settlement simply because that issue was also

subsequently characterized as an affirmative defense. And, the fact that one circuit judge ruled on defendants' motion to enforce settlement and another circuit judge ruled on plaintiff's motion for summary judgment does not lessen the good sense exercise of trial court discretion.[3]

Moreover, defendants are not aided by the fact they request the alternative relief of dismissal of plaintiff's claim as well as the enforcement of the settlement. Arguably, the alternative relief of dismissal is an affirmative relief at law rather than equitable. Defendants, however, do not make this distinction; nor do they argue any possible consequences which may flow from this distinction and which would preclude the trial court's implicit application of the doctrine of the law of the case.

On this record, it was within the trial court's discretion to use that doctrine to deny the defendants a second opportunity to litigate the issue of settlement. As Judge Learned Hand described the doctrine at the appellate level,

> [T]he "law of the case" does not rigidly bind a court to its former decisions, but is only addressed to its good sense.
>
> *Higgins v. Calif. Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d. Cir. 1924).

Judgment affirmed.

SMITH and GRIMM, JJ., concur.

---

**3.** Defendants do not suggest there is a meaningful difference between their burden of proof to support their motion to enforce settlement and their burden of proof to prove the "equitable defense" of settlement they requested.