Renee M. INGRAM and Greg Ingram
and Kelly C. Krohn and Matthew
Krohn, Respondents,

v.

Michael P. RINEHART, Appellant.

No. WD 61140.

Missouri Court of Appeals,
Western District.

June 30, 2003.

Ryan Karaim, John Gerard Schultz, Kansas City, for Appellant.

Terry M. Evans, Smithville, Louis Carl Accurso, Kansas City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Renee Ingram and Kelly Krohn brought suit against appellant Michael Rinehart for serious injuries they sustained in an automobile accident. They also sought punitive damages against Rinehart due to his intoxication at the time of the accident. A third person riding in Rinehart's vehicle was also injured in the accident but was not involved in this litigation.

At a jury trial, Rinehart admitted to liability and in the amount of Ingram and Krohn's medical expenses and economic damages. Accordingly, the only issues left for the jury to resolve were the plaintiffs' non-economic damages and whether to award punitive damages against Rinehart. The jury returned substantial verdicts in favor of both Ingram and Krohn but denied their punitive damages claim.

Rinehart now appeals, raising several points. He first contends that the trial court erred in refusing to permit the jury to hear evidence regarding his affirmative defense of settlement. For his second and third points, Rinehart argues that the trial court erred in admitting certain testimony and other evidence of his intoxication at the time of the accident, suggesting that such evidence was irrelevant because he admitted liability. His fourth point on appeal contends that the trial court erred in failing to grant his request for a mistrial regarding certain testimony by Ingram, despite the fact that Rinehart failed to raise a timely objection to that testimony. For his fifth point, Rinehart contends that the trial court erred by refusing to exclude the testimony of one of plaintiffs' expert witnesses on grounds of surprise, arising from the fact that the expert undertook a brief examination of Krohn on the morning that medical expert was to testify at trial. Lastly, Rinehart argues that the trial court erred in excluding his testimony regarding the injuries he sustained in the accident.

Finding that the trial court committed no reversible error in the proceedings below, we affirm.

## Factual and Procedural Background

Rinehart was covered by an insurance policy issued by Shelter Mutual Insurance Company that contained a personal injury liability limit of $50,000 per person and $100,000 per incident. When Ingram and Krohn filed suit, Rinehart filed a "Motion to Enforce Settlement Agreement" alleging that a pre-suit settlement agreement had been reached by the parties. The plaintiffs responded to the motion and accompanying suggestions and affidavits.

Thereafter, the trial court entered an order finding that there was no clear evidence that the parties had a settlement agreement and, therefore, denying the motion.

The present issue raised by Rinehart is error in refusing to permit evidence of the alleged settlement agreement before the jury to support his affirmative defense. Rinehart does not appeal the trial court's order denying the motion to enforce settlement. Ultimately, it was Rinehart's intent to submit the affirmative defense to the jury. The offer of proof made when the court sustained Ingram and Krohn's objection was the same set of affidavits that was attached to the Motion to Enforce Settlement. The legal file prepared by the parties does not contain the original answer to the petition by Rinehart, although we infer from subsequent events that it did not include a defense of settlement. An amended answer was filed during the trial asserting affirmative defenses of "release, acceptance, payment and settlement" and that, based on those defenses, the action should be dismissed. The plaintiffs raised no objection to the late filing of the answer, and the timeliness of its presentation plays no role in our disposition.

The parties' arguments concerning the alleged settlement agreement revolve around a series of letters and phone conversations between Shelter's claims representative and counsel for plaintiffs Krohn and Ingram. Rinehart claims that Ingram and Krohn agreed to settle the two claims for $66,667.67 (two-thirds of the policy limits). Ingram and Krohn denied that there was any final settlement agreement. The verdicts at trial were substantially in excess of the policy limits.

On January 28, 1999, counsel for Krohn wrote Shelter, making a settlement demand of $50,000. Shelter's claim department replied, in a letter dated February 15, 1999, that they would be willing to settle all claims for the policy limits, provided all parties agreed on the division of that amount.

According to the affidavit of Charles Nitz, Shelter's claims representative, he claims to have had a conversation with Krohn's counsel on May 3, 1999, in which counsel advised that Krohn and Ingram would be willing to settle their claims for two-thirds of the policy limits. On May 4, 1999, Krohn's counsel (who was also representing Ingram at this point) sent another letter, which stated, in part: "I understand you are looking into obtaining authority to settle Renee [Ingram] and [Kelly Krohn's] claims for two-thirds of the policy limits. Once you notify us of that fact, we will contact the medical care providers with respect to their liens." Rinehart contends that this letter was written to confirm the May 3 telephone conversation.

Krohn and Ingram's counsel sent another letter to Shelter on June 17, 1999, in which he reiterated the $50,000 demand on behalf of Krohn and made a new demand on behalf of Ingram for $50,000. It appears that this demand was sent to trigger the prejudgment interest provisions of Section 408.040, RSMo. The Nitz affidavit also states that he spoke with Krohn and Ingram's counsel on July 14, 1999, at which time Nitz was advised that the plaintiffs were still willing to settle for two-thirds of the policy limits. The affidavit further states that he sent a letter on August 3, 1999, accepting that offer. That letter, however, stated (emphasis added):

We are now in a position *to make an offer* of two-thirds of our policy limits on your two above clients. Our policy limits, as I have previously discussed with you, are 50,000/100,000 policy limits. Two-thirds of this coverage is $66,666.67. *We will be willing to make that offer at this time for a full and*

*final release of all parties, including waivers of subrogation on the under insured motorist claims and hospital liens.* As soon as you can make arrangements for those waivers and liens, please contact me regarding how you want me to proceed or any help you need with getting those waivers on subrogation and hospital liens.

At the conclusion of trial, the jury found in favor of the plaintiffs, awarding Krohn $876,468.51 in compensatory damages and awarding Ingram $2,961,192.55 in compensatory damages. The jury, however, did not award punitive damages against Rinehart. The trial court entered its judgment in accordance with the jury's verdict. Rinehart now appeals.

### Exclusion of Evidence of the Alleged Settlement

In the first of six points on appeal, Rinehart contends that the trial court erred in excluding all evidence of the settlement agreement allegedly reached between Shelter and plaintiffs' counsel. He argues that such evidence was relevant to his affirmative defense of settlement. Krohn and Ingram respond that the question was not a jury issue and that the issue was resolved through the trial court's ruling on Rinehart's motion to enforce settlement agreement.

█ Trial courts are vested with broad discretion in admitting or excluding evidence. *Tennison v. State Farm Mut. Auto. Ins. Co.*, 834 S.W.2d 846, 848 (Mo. App.1992). Generally, we will find error and reverse the trial court only upon a showing that the trial court abused that discretion. *Egelhoff v. Holt*, 875 S.W.2d 543, 549–50 (Mo. banc 1994). The excluded evidence would certainly be relevant for the jury to hear if Rinehart's affirmative defense was properly a jury issue as Rinehart claims. Ingram and Krohn argue,

however, that whether a settlement had been reached was purely an issue for the court.

Rinehart's position implicitly seems to assume that an affirmative defense based on disputed facts is, necessarily, an issue for the jury. That conclusion is too broad. Affirmative defenses may be legal or equitable and may be joined together in one answer. *See* Rule 55.10. Rinehart cites only *Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181 (Mo.App. E.D.1998) in support of this point on appeal. There, the court reversed a summary judgment concerning a settlement agreement holding that "Where the evidence regarding a contract is conflicting or is capable of more than one inference, the question raised is one of fact for the trier of fact to determine." *Id.* at 184. Rinehart's mistake in extrapolating this statement to equate "trier of fact" with a jury is oversimplistic and ignores both the nature of the proceeding and the context of the appeal in *Tinucci.* The question of whether there was a fact issue was important because *Tinucci* involved a grant of summary judgment. More importantly, Rinehart ignores that *Tinucci* was a *suit in equity for specific performance* of a settlement agreement. *Id.* at 182. *Tinucci* stands for the proposition that even in an action in equity, the presence of a disputed issue of fact precludes issuance of a summary judgment, and the case must proceed to a trial on the merits under Rule 73.01 with the equity court acting as the trier of fact to resolve the dispute. It does not stand, as urged by Rinehart, for the proposition that the defense of settlement is, necessarily and always, an issue fact for the jury.

█ Ingram and Krohn point out that an agreement to settle a lawsuit may be enforced by motion, citing *Leffler v. Bi-State Dev. Agency,* 612 S.W.2d 835 (Mo. App.1981). Such a motion may be filed in

the underlying action and, in effect, adds a collateral action seeking specific performance of the settlement agreement. *Wenneker v. Frager,* 448 S.W.2d 932, 936 (Mo. App.1969). An action for specific performance invokes the equity jurisdiction of the court. *See Hoover v. Wright,* 202 S.W.2d 83, 86 (Mo.1947). Thus, to say that a motion to enforce a settlement *may* be brought in equity is not to necessarily determine that equity is the sole remedy. Ingram and Krohn recognize this and rely further upon *Pathway Financial v. Schade,* 793 S.W.2d 464 (Mo.App.1990).

In that case, Pathway Financial brought an action on a promissory note against Mr. and Mrs. Schade, the makers of the note. *Pathway,* 793 S.W.2d at 465. *Id.* at 466. Settlement negotiations ensued. The Schades believed a settlement agreement had been reached but was subsequently breached by Pathway. *Id.* They filed a motion to enforce the settlement which, after a hearing, was denied. *Id.* Subsequently, the Schades filed an amended answer asserting the affirmative defense of settlement. *Id.* When Pathway filed a motion for summary judgment, the Schades set up their affirmative defense of settlement as a bar to judgment. *Id.* After the court granted summary judgment, the Schades appealed, contending both that the trial court erred in denying their motion to enforce settlement and that their affirmative defense of settlement precluded summary judgment. *Id.* at 467–68. Pathway argued that the order denying enforcement of the settlement was not appealable. *Id.* at 466. The Eastern District rejected that argument, finding that, although not final for purposes of appeal when entered, it became appealable once a final judgment was rendered. *Id.* at 466–67. The Schades then argued that the court erred in granting summary judg-

ment because of their affirmative defense of settlement. The court first noted that the Schades' affirmative defense sought the alternative relief of compelling the settlement or the dismissal of Pathway's claim. *Id.* at 469. Requesting the affirmative relief of compelling settlement effectively sought the equitable relief of specific performance. *Id.* The court then held (citing *State ex rel. Rope v. Borron,* 762 S.W.2d 427, 429 (Mo.App.1988)), that the court has the power to try an equitable defense prior to trying the legal issues raised by the plaintiff's petition. *Pathway* at 469. Ultimately, the *Schade* court held that the assertion of the affirmative defense of settlement was an attempt to relitigate the settlement issue. That attempt, held the appellate court, could be denied by the trial court within its discretion under the doctrine of the law of the case. *Id.* at 468–69. The court further acknowledged that it was unaware of any application of that doctrine at the trial court level in Missouri but that it was implicitly and properly used by the *Schade* trial court to deny the affirmative defense of settlement. Thus, it seems that *Schade* holds, contrary to Ingram and Krohn's claim, not that the affirmative defense may not be asserted after denial of a motion to compel, but that it is up to the trial court in its *discretion* to permit the settlement defense to be relitigated by the trier of fact as an affirmative defense. *Id.* at 469.

■ A potentially significant difference exists, as well, between the present situation and that described by the *Schade* court. There, the affirmative defense sought equitable (enforcement of the settlement) as well as legal relief (dismissal of the petition). *Id.* Here, Rinehart's answer sought only the legal relief of dismissal.[1]

1. As in *Schade,* the parties make no distinc- tion between the different types of relief or

Although we ultimately agree with the result in *Schade* that an uncompleted settlement is enforceable in equity rather than by an affirmative defense at law for the jury, we have some reservations about the rationale for that result expressed in *Schade*. No Missouri case discovered by us since *Schade* applies the doctrine of law of the case at the trial court level.[2] *Schade* found authority for application of the doctrine in 1B *Moore's Federal Practice* § 0.404[1], p. 117 (2 ed.1988). Even a cursory consideration suggests, however, substantial differences between Missouri and Federal procedure regarding the necessity to "reargue" or, more properly, "preserve" the arguments made in interlocutory pretrial orders. Moreover, *Schade* describes it as a discretionary doctrine but gives no guidance as to how the proper exercise of that discretion might be reviewed. 793 S.W.2d at 469. Certainly, consistent with *Schade* and general principles regarding interlocutory orders, the trial court could decide itself, in its discretion, to revisit the interlocutory denial of a motion to enforce settlement. But, the issue here (and arguably ignored in *Schade*) is whether the exercise of that discretion could include submitting the affirmative settlement defense to the jury as trier of fact. And *Schade* offers no guidance, or is any apparent to us, as to what standards might be applied to review a trial court's decision to change its mind and submit (or not submit) to the jury the same settlement defense that the court had previously ruled on. Nevertheless, we find that there are good legal and practical reasons to hold that where the settlement is incomplete or executory that the defendant is limited to equitable relief if he chooses to stand by the settlement and may not submit the defense to the jury.

Understanding of our holding requires further analysis of the so-called "defense" of settlement. Although the Schade court only assumed that settlement is properly characterized as an affirmative defense, *id.* at 469, we think it is well settled that it meets the definitional test for an affirmative defense, an allegation of additional facts which will defeat a cause of action. *Weil v. Rigali,* 980 S.W.2d 89, 91 (Mo.App. 1998). As we have noted, supra, defenses may be legal or equitable. Thus, whether the defense be characterized as affirmative or not does not answer the question of whether it is determined by the trial court sitting in equity or by the jury in an action at law.

Accord and satisfaction is listed specifically in the non-exclusive list of affirmative defenses in Rule 55.08. Settlement, as an affirmative defense, is more accurately described as "compromise and settlement" and, in fact, is a subspecies of the doctrine of accord and satisfaction. "[T]he distinction between compromise and settlement, and accord and satisfaction, is now regarded by most courts and authorities as slight, and the terms are often used interchangeably." *McGinnis v. Rolf,* 239 Mo.App. 54, 189 S.W.2d 456, 461–62 (1945).

 Most importantly, both have two necessary elements. An accord and satisfaction requires both the accord and satisfaction. *Long v. Weiler,* 395 S.W.2d 234, 237 (Mo.App.1965). In other words, it requires both an agreement (the accord) and

any possible consequences flowing from such a distinction. *Schade,* 793 S.W.2d at 470.

2. Other than the common and long standing application on remand after appeal or on a second appeal after remand. In those situations the trial court has no discretion not to follow the law of the case and the mandate, although the court of appeals does have some discretion to follow the law of the case on a second appeal. *See Student Loan Mktg. Ass'n v. Raja,* 914 S.W.2d 825, 830 (Mo.App.1996).

execution of the performance of the agreement (the satisfaction). Under the doctrine of compromise and settlement, the compromise represents the accord (agreement) and the settlement (performance) represents the satisfaction. And, in both accord and satisfaction and compromise and settlement, the legal effect of merging the original cause of action in the new agreement is the same.[3] *See, e.g., Chapman v. Adams*, 204 Mo.App. 659, 219 S.W. 132, 133 (1920); *Farmer v. Arnold*, 371 S.W.2d 265, 269 (Mo.1963).

In *Bestor v. American National Stores Inc.*, 691 S.W.2d 384, 389–90 (Mo.App. 1985), the court considered the situation where the "satisfaction" element of a claimed accord and satisfaction had not yet been performed. The court described the situation as an *accord executory* meaning "an agreement for the future discharge of an existing claim by a substituted performance." Citing A. Corbin, Contracts §§ 1268–1276 at 1025 (1952) and the Restatement of Contracts (Second) § 281, comment a (1981), the court described the legal effect as to suspend the original claim and, as long as the debtor has not breached the accord, the creditor is precluded from maintaining an action on the original claim. We see no legal or logical distinction between a tort victim (a creditor) and the tortfeasor (the debtor) in this context.

■ In this case, there is no claim that Rinehart, through Shelter Insurance, either tendered or delivered any money (satisfaction or settlement) to Krohn or Ingram. Nor did the parties execute any written document of settlement or release. Rather than a completed compromise and settlement, therefore, at best, there was only an executory compromise or executory settlement (that is, one in which a vital portion remains to be completed—the delivery and acceptance of money—the performance element as noted in *Bestor*).

Other cases have recognized the concept of an accord executory. In *Estate of Knapp by and through Igoe v. Newhouse*, 894 S.W.2d 204 (Mo.App.1995), an estate sought to recover on a note. The case was passed for trial when the parties announced a settlement, but the "satisfaction" or "settlement" portion of the accord and compromise or compromise and settlement was not completed. *Id.* at 205–06. The estate later successfully moved to set aside the settlement and received after trial a judgment on the original claim. The court, citing *Bestor,* held that the settlement agreement was an accord executory. *Id.* at 207. Because, in that case, the breach of settlement was by the defendant obligor, the court applied the familiar rule that if a defendant refuses to comply with the terms of a settlement, in whole or in part, the plaintiff may elect to enforce the settlement or abandon the settlement and proceed under the original cause of action. *Id.* at 208. See also *McKean v. St. Louis County,* 964 S.W.2d 470 (Mo.App.1998) for a similar situation and holding. We recognize, of course, that, unlike in the authorities cited above, the claimed compromise agreement here took place before suit was filed and that the claimed breach of the compromise was by the plaintiff and not the defendant.

The question, though, is whether those differences are of any legal moment. We determine that they are not. In either scenario, the agreement of accord or compromise has not been concluded because satisfaction or performance has not been

---

**3.** As compared, for example, to the defense of release, which is a written contract of compromise and settlement which bars the claim, but not through the doctrine of merger. *Stahly Cartage Co. v. State Farm Mut. Auto. Ins. Co.,* 475 S.W.2d 438, 441–442 (Mo.App. 1971).

completed. The very term "executory," both in general usage and legal usage, suggests that some act remains to be completed to finalize the agreement. *See* BLACK'S LAW DICTIONARY 570 (6th ed.1990). In fact, it is the opposite of executed or completed. *Id.* We perceive no legal or practical reason why the doctrine of executory accord would vary depending upon the length of time between the agreement and the time of future substituted performance by the debtor. Although, in *Bestor*, the future performance was some years off, in *Estate of Knapp*, the future performance was immediate (the return of certain property to the estate). There are solid practical and equitable reasons for treating these situations similarly. The legal effects of an accord executory and a completed settlement as noted earlier are quite different. Where a completed settlement has been made, the original cause of action is extinguished by merger into the new agreement, while the accord executory merely suspends the original claim until such time as the agreement is totally completed.[4] Enforcement of the executory settlement in equity, rather than at law, permits the court to fashion the remedy to complete the parties' settlement agreement if it finds that one was reached. A court in a specific performance action can even award a money judgment to effectuate the agreement. *Paul's Rod & Bearing, Ltd. v. Kelly*, 847 S.W.2d 68, 74 (Mo. App. W.D.1991). If an executory accord would be subject to submission to the jury as a defense at law, as Rinehart's claim requests, the result would be a defendant's verdict on the plaintiff's primary claim with no concomitant order to effectuate the settlement by execution of documents or performance (*e.g.*, payment of money).

We conclude that, where the settlement agreement remains executory, the accord can be enforced in equity by a motion to enforce or an action for specific performance but cannot be set up as an affirmative bar at law to the original claim. Such was the result in *Erwin v. Jones*, 192 Mo.App. 326, 180 S.W. 428 (1915). There, the defendant had allegedly obtained the plaintiff's submission to his sexual advances by the ancient and former practice of a promise of matrimony. After a baby was born and defendant did not complete his promise, the parties entered into a settlement for release of her claim for breach of promise for the sum of $100. The defendant paid only $10 of this amount initially, and before final payment the spurned mother returned the money and sued on her original claim. The still single, but now financially vulnerable, father set up the settlement agreement as an affirmative defense and bar to his former companion's claim. The court said: "This plea amounts to no more than an averment of an accord, and, on its face, lacks the element of satisfaction. Both accord and satisfaction must enter into such agreement to be a bar to the original cause of action" and "a mere executory accord is insufficient to sustain a plea in bar to the original cause of action, and that this rule is not affected by a part performance." *Id.* at 430 (citations omitted). The court, after further analysis, held that the plea of an executory accord is not "sufficient to warrant the submission of that issue to the jury." *Id.*

The evidence contained in Rinehart's offer of proof is likewise proof only of an executory or incomplete accord and satis-

---

**4.** Obviously, there would be some situations of substituted future performance where, by the doctrine of novation, a new agreement is substituted for the old obligation. Novation is, of course, a question of the parties' intent and could negate application of the accord executory doctrine.

faction and is, therefore, insufficient to warrant submission of the legal defense of settlement to the jury as a complete bar to Krohn and Ingram's claims. Because the evidence did not support such a defense, the court could not have erred in sustaining the objection to its admission. Point denied.

### The Trial Court Did Not Err in Admitting Testimony Regarding the Circumstances of the Accident, Including Rinehart's Intoxication

■ Rinehart's second and third points on appeal concern admission of various evidence regarding the circumstances of the underlying automobile accident. That evidence also included direct and demonstrative evidence bearing on the issue of Rinehart's intoxication at the time of the accident.

In his second point on appeal, Rinehart challenges the admission of testimony from several witnesses describing the circumstances leading up to the accident itself, and its aftermath. During that testimony, photographs of the accident scene were also admitted. He argues that this testimony and evidence was irrelevant because he had admitted his fault and liability for the accident and had stipulated to the plaintiff's medical expenses and lost wages. He also contends that the testimony was cumulative and repetitive.

In his third point on appeal, Rinehart claims that the trial court erred in the admission of certain demonstrative evidence. Specifically, he contends the trial court erred in permitting the introduction of several beer glasses, despite Rinehart's concession that they were probably the same size as those he was drinking the night of the accident. Rinehart also argues that the trial court erred in overruling his objections to questions regarding beer cans found in the back of his truck on the night of the accident. He contends that his admission at trial that he was intoxicated at the time of the accident rendered any additional evidence irrelevant and prejudicial.

■ As with the first point on appeal, these next two points on appeal are reviewed for abuse of discretion. *Egelhoff*, 875 S.W.2d at 549–50. Here, we find that the trial court did not abuse its discretion in admitting testimony and evidence regarding the circumstances of the accident and Rinehart's intoxication. The party bearing the burden of proof is not bound to a party's admission. *Franklin v. Byers*, 706 S.W.2d 230, 231 (Mo.App.1986); *Ruppel v. Clayes*, 230 Mo.App. 699, 72 S.W.2d 833, 835 (1934). Instead, that party may elect to present evidence to prove the issue at jury trial. *Ruppel*, 72 S.W.2d at 835. Furthermore, that testimony and evidence was also admissible because it was directly relevant to the disputed issues regarding plaintiffs' special damages and their claim for punitive damages. There was no error in admitting the challenged testimony and evidence. Rinehart's second and third points on appeal are therefore denied.

### The Trial Court Did Not Err in Refusing Rinehart's Motion for Mistrial

■ For his fourth point on appeal, Rinehart argues that the trial court erred in denying his motion for mistrial following a reference by Ingram to Rinehart's prior charges for driving under the influence. The statement Rinehart takes issue with was a part of the following portion of Ingram's testimony:

Q: You feel like you look that way today?

A: No, I don't. I'm a different person. I have different taste. My personality has changed ....

Do you know what that is like because of drunk driving? And I want you to stop drinking and driving. I don't want this to happen to someone else. Someone else might get killed. This is not a joke. You have done this before and you know what I mean. You have a problem. You need to fix it because you have destroyed a lot of people's lives, a lot of people's lives. I don't know how you sleep at night. I really don't. I really don't.

There was no contemporaneous objection to the statement or any motion to strike the challenged testimony. Instead, Rinehart's request for mistrial was not made until the conclusion of Ingram's testimony, a short while later.

Krohn and Ingram argue that the issue has been waived, given Rinehart's failure to make a timely objection to Ingram's comment. They also point out that Rinehart's counsel drew the jury's attention to her comment in closing argument, arguing that they did not object to her testimony because he thought "allowing her the opportunity to look Michael Rinehart in the face and tell him what she thought is a good thing."

■ The grant of a motion for mistrial is a drastic remedy. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 867 (Mo. banc 1993). Generally, we will not reverse the denial of a motion for mistrial except upon a showing that the trial court abused its discretion. *Id.* Here, however, there was not a timely and contemporaneous objection to Ingram's comment. Through his failure to raise the issue in a timely manner, Rinehart has not properly preserved the issue for appellate review. *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 168 (Mo.App.1997).

■ At best, we could exercise our discretion to review the point for plain error. *In re Swearingen,* 42 S.W.3d 741, 746 (Mo. App.2001). We will not exercise that dis-

cretion, however, where counsel abandoned the issue due to trial strategy. *See Sherpy v. Bilyeu,* 608 S.W.2d 521 (Mo.App. 1980). Here, it appears that trial counsel made a deliberate choice to permit Ingram's testimony, as in closing arguments counsel stated that he thought "allowing her the opportunity to look Michael Rinehart in the face and tell him what she thought is a good thing."

Rinehart has failed to preserve the issue, and we decline to exercise our discretion to engage in plain error review of this point on appeal. Point denied.

### There Was No Error in Refusing to Exclude Dr. Kelly's Testimony

■ In his fifth point on appeal, Rinehart argues that the trial court erred in refusing to exclude the testimony of one of plaintiffs' expert witnesses, Dr. James Kelly. Dr. Kelly had been deposed prior to trial, when it was unclear whether he would be available to testify at trial. Early on the morning he was to give his trial testimony, he conducted a twenty-five minute examination of plaintiff Krohn. Rinehart's counsel was apprised of the subsequent examination, who moved that Dr. Kelly's testimony be excluded on grounds of surprise. Plaintiffs argued that the substance of Dr. Kelly's opinion testimony was unaffected by the examination earlier that morning. The trial court gave Rinehart's counsel five minutes to interview Dr. Kelly, indicating that additional time would be provided if Rinehart's counsel felt that he needed such time. After a brief recess (during which he apparently interviewed the expert), Rinehart's counsel made no such request or raised any further objection regarding the admissibility of the doctor's testimony.

As with the prior evidentiary points, we review Rinehart's fifth point on appeal under an abuse of discretion standard. *Gassen v. Woy,* 785 S.W.2d 601, 604–05 (Mo.

App.1990). Here, the trial court only gave Rinehart's counsel a short time to interview Dr. Kelly. The court clearly stated, however, that additional time would be provided if counsel felt it was needed. Given the lack of such a request or any further objection after that interview took place, we must conclude that Rinehart's counsel was satisfied that the expert's opinions were essentially unchanged by his examination of Krohn, earlier that day.

■ To find an abuse of discretion, we must conclude that the trial court's "ruling runs counter to the logic of presented circumstances and is so unreasonable and arbitrary as to shock the sense of justice and demonstrate a lack of careful consideration." *Mo. State Park Bd. v. McDaniel,* 473 S.W.2d 774, 778 (Mo.App.1971). Here, the trial court, upon being presented with Rinehart's objection, permitted his counsel to interview the expert, to determine if additional time was required to re-depose the expert. Similar procedures have been approved by this court in the past. *See, e.g., Gassen,* 785 S.W.2d at 604. In the case at bar, absent any request by Rinehart for additional time to interview the expert or further objection to Dr. Kelly's testimony, we find that the trial court did not abuse its discretion in permitting Dr. Kelly to testify. Rinehart's fifth point on appeal is denied.

## The Exclusion of Rinehart's Testimony About His Injuries Was Not Error

■ For his final point on appeal, Rinehart argues that the trial court erred in excluding his testimony regarding the nature and extent of his injuries. He argues that the testimony was relevant to counter the plaintiffs' accusation that his inability to recall the accident was due to his intoxication. He contended that the memory lapse was due to his injuries. He also contends that evidence of his injuries was relevant to proving the force and mag-

nitude of the collision. Plaintiffs argue that the evidence was irrelevant because Rinehart's injuries were not at issue.

■ Rinehart testified that he recalled leaving the bar on the night of the accident and that his next memory was waking up in the hospital three weeks later. The jury could infer from that testimony that Rinehart's memory lapse was due to his injuries and not necessarily from intoxication. In certain circumstances, the injuries (or lack thereof) suffered by a defendant may be relevant to counter evidence by a plaintiff regarding the severity of the accident. *See Rauscher v. Gen. Motors Corp.,* 905 S.W.2d 158, 162 (Mo.App.1995). Rinehart fails to show, however, how Rinehart's testimony would have contradicted or countered the plaintiffs' evidence or was otherwise relevant to his defense of the case.

■ Even if the exclusion of Rinehart's testimony was an abuse of discretion, Rinehart has failed to show how he was prejudiced by that exclusion. The jury rendered its verdict in favor of him regarding the plaintiffs' punitive damages claim, and he makes no argument on appeal that the amount of the verdict awarded by the jury was excessive. Even if exclusion of Rinehart's testimony was error, we will not reverse, unless that exclusion prejudiced him, thereby preventing him from obtaining a fair trial. *See Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 331 (Mo.App.2000). Rinehart's fifth point on appeal is denied.

Finding no error in the proceedings below, the judgment of the trial court is hereby affirmed.

PAUL M. SPINDEN, Judge, and JAMES M. SMART, JR., Judge, concur.