NINA K. GREEN v. WILKES E. BOOTHE AND MAMIE B. BOOTHE.—188. S. W. (2d) 84.

Kansas City Court of Appeals.   April 30, 1945.

*Jay L. Oldham* for appellant.

*W. F. Wilkinson* and *W. Raleigh Gough* for respondents:

BLAND, P. J.—This is an action, instituted on August 17, 1943, in two counts; each upon a promissory note in the sum of $4000, executed by the defendants, in favor of A. M. Robertson, and now held by the plaintiff. There was a verdict and judgment in favor of defendants. Plaintiff has appealed.

The petition alleges that the notes in question were dated August 2nd, 1926, and that each provided that it should bear interest at the rate of 6% per annum, payable in monthly installments of $75, until August 2nd, 1931, when the balance of $250 be paid; that the notes bore interest after maturity at the rate of 8% per annum; that they had been indorsed and transferred first to George F. Green and then to the plaintiff; that the defendants had made payments on the notes to September 17, 1937; that the balance of the principal and interest due on each of said notes was $1066.42.

The answer to each count consists of a general denial and a plea of the 10 year statute of limitation. Plaintiff's reply is a general denial.

The notes were secured by a second deed of trust on certain real property in Kansas City. During the time that the notes were owned by George F. Green the Traders Gate City National Bank of Kansas City held them as collateral security for an indebtedness owed by him to it. The cashier collected some of the payments indorsed on the notes. There are indorsements on both notes showing various payments, the last of which is dated December 14, 1932. After applying the credits shown by these indorsements, there was due, upon the principal of each note, the sum of $1062.72, as of December 14, 1932, plus interest from said date. Each note bears the indorsement of A. M. Robertson and George Fuller Green.

The defendant, Mamie B. Boothe, testified that she knew nothing about the transactions mentioned in the evidence; that she left the handling of all transactions to her husband, the defendant, Wilkes E. Boothe.

Wilkes E. Boothe testified that, after the notes had been reduced to approximately $1000 each in 1932, he made no further payments thereon for several years; that he did not consider the real estate on which the second deed of trust was given to be worth the amount of the first and second mortgages thereon and the delinquent taxes; that when the cashier of the bank requested payment from him on said notes he told him that he did not care to make further payments because of these facts; that the cashier told him that "they" would reduce the amount of the indebtedness and the rate of interest if the witness would make further payments; that, thereafter, the cashier submitted to him two extension agreements, which he and his wife signed.

Each of the extension agreements recites that there was due a balance of $1060.72 as principal on each of the notes; that the consent of George F. Green had been obtained "to this extension agreement" and for a consideration of One Dollar, and other valuable consideration, the "principal amount of said note . . . is hereby reduced . . . from the sum of One Thousand Sixty Dollars and Seventy-two Cents . . . to the sum of Five Hundred Dol-

lars,'' which the defendants agree to pay ''as extended,'' in monthly installments of $5.00, including interest at the rate of 4% beginning September 19, 1937 for a period of one year, and to increase the amount of the installments thereafter, until July 19, 1942, at which time the entire balance was to be paid. They also recite:

''It is hereby agreed and declared, that in default of the punctual payments of principal and interest under said extension agreement herein nothing herein contained shall waive or annul the provisions of said second deed of trust that said property may be advertised and sold, and it is further agreed and declared that the same may be so advertised and sold in the manner provided in said second deed of trust.''

(Each of these agreements is headed ''extension Agreement,'' although it is quite apparent that they are not such in the sense that the term ''extension agreement'' is ordinarily used, as they do not purport to extend the original indebtedness but are new and independent contracts providing for the payment of a new indebtedness in different amounts, bearing a different rate of interest, and otherwise differing in terms. However, for convenience, we will hereinafter refer to them as the Extension Agreements.)

The defendant, Wilkes E. Boothe, testified that after the Extension Agreements were executed he paid the cashier the sum of $10 and the latter made the indorsements that appear on the Extension Agreements; that he did not say anything to the cashier at the time he made the payment. Over the objection of plaintiff, defendant was allowed to testify, that he ''understood'' that such payment was to be credited on the ''Extension Agreements'' and that he would not have made a payment except for his understanding that the amounts of the indebtedness under said notes had been reduced to $500 each in accordance with said extension agreements. Defendants made no payment on the extension agreements other than the one mentioned. This payment was allocated, one-half to each extension agreement, and indorsed thereon, as follows: ''Sept. 17, 1937-Int. $2.87, Princ. $2.17, to 9-19-1937, Bal. $497.17, J.E.H.'' (The name of the cashier was J. E. Hensley.)

Plaintiff testified that the cashier collected some of the payments indorsed on said notes and collected the payment indorsed on the extension agremeents; that by crediting on the notes the amount indorsed on the extension agreements, there was due as principal on each of said notes the sum of $1060.72, and interest at 8% per annum from July 30, 1937.

Counsel for plaintiff, in open court, stated that plaintiff was not willing to abide by the terms of the extension agreements reducing the amount of the principal indebtedness to $500 on each note, and forgiving the accrued interest to September 19, 1937, or reducing the rate of interest to 4% per annum after that date.

The sole question involved in this appeal is whether the notes sued on are barred by the statute of limitations.

Plaintiff insists that the court erred in refusing to give an instruction offered by her directing the jury to render a verdict in her favor. In this connection, plaintiff insists that the extension agreements were void for the reason that a debt cannot be satisfied by the payment of any less amount than the amount due on the debt; that, by executing the void extension agreements, defendants did not change the existing liability (on the notes) to the plaintiff and that the indebtedness continued unchanged and unreduced; that "it is not the indorsement of a credit, but the payment, that operates as a renewal of the promise and removes the bar of the Statute of Limitations. Hence it is immaterial as to the intention of respondents, that they only had in mind, of paying on their pretended reduced indebtedness, and not on their original indebtedness, 'named in their extension agreements;'" that on September 17, 1937, defendants, with full knowledge of the facts, made a voluntary payment on the principal and interest of "their indebtedness," although under a mistaken belief as to the legal consequences of the extension agreements. Plaintiff concludes that as this payment was made less than 10 years before the filing of this suit the notes are not barred.

However, we find that plaintiff, after the court refused to give her instruction for a directed verdict, caused the court to give an instruction to the jury telling it that if it found "that defendants on July 30th, 1937, acknowledged in writing, the indebtedness mentioned in evidence; and, if you further find and believe from the evidence that defendants on September 17th, 1937, intentionally made a payment upon the interest and principal of said notes amounting to Five Dollars, then you will find the issues for the plaintiff on each count of the petition."

Defendants, also, caused the court to give an instruction upon the issue of intention. This instruction is numbered "C". This was the only issue submitted to the jury by either party.

By requesting her instruction on the merits plaintiff waived the right to complain of the court's refusal of her peremptory instruction. [Everhart v. Bryson, 244 Mo. 507; Fawkes v. National Ref. Co., 341 Mo. 630; Fawkes v. National Ref. Co., 108 S. W. (2d) 7; John Deer Plow Co. v. Cooper, 91 S. W. (2nd) 145; Wissman, et ux. v. Pearline, et ux., 135 S. W. (2nd) 1.]

However, plaintiff complains of the giving of defendants' instruction "C", which told the jury: "that if the payment made by defendants on or about September 17, 1937, was not made with the intention of recognizing their liability upon said notes and of thereby promising, expressly or impliedly, to pay the balance then due on said notes, but that the defendants actually intended to make such payment upon the indebtedness represented by the 'extension agreements' mentioned in

the evidence (whereunder the amount of each such note had been purportedly reduced to the sum of $500) and defendants did not intend to make such payment except upon the supposition that each of said notes had been reduced in amount to the sum of $500, then such payment did not operate to prevent the running of the statute of limitations upon said notes and in that event your verdict should be for the defendants on each count of the petition.''

Plaintiff insists that this instruction is erroneous, for the reason that the court committed error in permitting the defendant, Wilkes E. Boothe, to testify that he understood that the payment made after the execution of the extension agreements was to be credited upon those agreements, and that he would not have made such payment, except for this understanding; that such testimony amounted to ''a mere notion, secret intention not made known to the creditor, and the jury should not be permitted to speculate with the rights of the parties based upon conjectures.'' Plaintiff, also, urges that the instruction is ambiguous, misleading and confusing; that the word ''supposition'' contained in the instruction denotes that something that did not exist which was supposed to exist and that there is no room for supposition in the case; that ''The jury are called upon to determine the intention and meaning of respondents' 'extension agreements' which is asking them to pass upon the law governing their contract.''

Defendants concede that the extension agreements were void, and it appears that the instruction was intended to advise the jury that the controlling factor was the intent of the defendants, that is, if they made the payment upon the supposition that the extension agreements actually reduced the indebtedness on the notes and the payment was upon the agreements and not intended to be on the notes, there was no intent to recognize, and impliedly promise to pay, the entire balance due on the notes, uneffected by the extension agreements.

While, the instruction might have been better worded, we cannot say that it fails to submit the legal effect of the facts which it covers. However, we are of the opinion that the judgment was for the right party, in any event, and, for this reason, no instruction given by the court to the jury can be held to be reversibly erroneous.

The burden was upon plaintiff to show, not only that the payment that was indorsed on the extension agreements was made upon the notes but, also, that it was made by the defendants with the intention of recognizing their indebtedness on the notes and, under circumstances, from which a promise could be implied to pay the balance of the indebtedness evidenced by them.

''A promise preventing or repelling the bar of the statute of limitations may be implied from a clear, unconditional admission of the existence of the debt at the time of such admission, if it is unaccompanied by any circumstances which rebut such implication, such, for example, as would be justly inferable from a refusal to pay, or

expressions indicating a mere willingness to pay at a future time, *or circumstances indicating an intention not to pay,* a denial of liability the declaration of exoneration from liability, a denial of the justness of the debt . . . The acknowledgment from which a promise may be implied need not be in any particular form or contain any particular substance, it is sufficient the debt is acknowledged as an existing one, and a liability or willingness to pay it is inferable therefrom. The acknowledgment of the debt may be in whole or in part, and need not be express, unless so required by statute, but may be inferred from facts or acts. The words must be construed according to their just and natural import, without putting upon them any force or constraint. *The acknowledgment must, however, be distinct, unqualified, and unconditional, clear, distinct and unequivocal,* or an expression of willingness to pay upon a contingency that has happened, and mere vague and uncertain expressions or conversations will not suffice. . . . A part payment to be effectual to interrupt the statute must be voluntary on account of the debt in suit, *and free from any uncertainty as to the identification of the debt on which it is made,* and in this behalf it is said that no distinction can be made on principle between a written acknowledgment and part payment. It must also be made as part payment of a larger debt, for which the action is brought and be so accepted by the creditor, *and under such circumstances as are consistent with an intent to pay the balance,* which intent must be determined by the jury. The payment is admissible to show the intent with which it is made. (Italics ours.) [37 C. J., pp. 1104, 1105, 1106, 1107, 1108, 1109, 1110, 1146, 1147, 1148. See, also, Chambers v. Rubey, 47 Mo. 99; Caneer v. Kent, 119 S. W. (2nd) 214, 218; Wells v. Hargrave, 117 Mo. 563, 568, 569, 570; Cochrane v. Cott, 156 Mo. App. 663; Regan v. Williams, 185 Mo. 620, 631; Mo. Interstate Paper Co. v. Gresham, 116 S. W. (2nd) 228, 229; Fowler v. Sone, et al., 226 S. W. 995.]

Therefore, it appears that in order for the cause of action to be saved from the running of the statutes of limitations, not only that the debtor make a payment upon the obligation, but that it be made under circumstances showing an intention to pay the balance, and the burden of proof to show such intent is upon the creditor. Such intention, of course, may be shown by an express acknowledgment of the indebtedness and intention to pay it, either written or parole, or that the payment was made upon the indebtedness under such circumstances that a promise on the part of the debtor to pay the balance of the debt may be implied. If the debtor make a payment on the debt without any statement, or under circumstances raising no inference that he refuses to pay the balance of the debt, a promise to pay the balance may be implied. However, if he accompanies his acknowledgment, either directly or by part-payment of the debt, with the statement that he does not recognize an obligation to pay the balance, the acknowledgment is ineffectual.

We fail to find any evidence in the record of any intention on the part of the defendants to pay the balance due upon the two notes in suit. It is true that, it is admitted that the extension agreements are void and, no doubt, defendants would have the right to have the payments made upon the extension agreements credited upon the notes in suit, if they so desired. But how, under the record in this case, can it be said that they intended to make any payment upon the notes in suit when they made payment on the extension agreements? How can it be said that, in making this payment, they intended to recognize the obligation evidenced by the notes and intended to pay the balance on them?

Plaintiff contends that the court erred in permitting the defendant, Wilkes E. Boothe, to testify that he understood that the payment he made was to be credited upon the extension agreements, and that he would not have made such payment, except for his understanding that the amounts of his indebtedness on the said notes had been reduced to $500 each, in accordance with the extension agreements. Plaintiff does not assign, as error, the action of the court in permitting the witness to testify as to his understanding, but merely urges that we should not consider such testimony, for the reason that it was incompetent.

Whether such testimony was incompetent, we need not say, for the following reasons: Assuming that the point is properly preserved, there is other evidence in the record, undisputed, that the $10 payment made by the defendant, Wilkes E. Boothe, was made for the purpose of having it credited upon the extension agreements. The agreements, themselves, show that the payment was indorsed upon them by the cashier of the bank, whose act was ratified by the plaintiff by accepting the money. Said defendant testified that he told the cashier that he did not care to make further payments on the notes for the reason that the property was not worth the amounts of the first and second mortgages and the delinquent taxes. The evidence is undisputed. The evidence is not susceptible to the inference that the $10 payment was made for any other purpose save to be applied upon the extension agreements.

In the last analysis, appellant's argument is based upon the theory that defendants, having intended to pay under the extension agreements, and the latter being void, the payment must be considered as having been made upon the indebtedness evidenced by the notes in suit and the intention is to be transferred to that, and whether it was intended to pay on the extension agreements or the notes is immaterial. But we think that the actual intention under which the $10 payment was made is material. Plaintiff cannot recover upon the theory that, because defendants paid the money upon a void obligation, it must be regarded as having been intended to be applied upon a valid obligation existing between the parties at the time. The

question of whether the obligation upon which the payment was made is void or valid is not material. The defendant, Wilkes E. Boothe, said to the cashier that he did not care to make any further payments on the notes and, mistaking the legal consequences of the extension agreements, and thinking that they were valid, (when, as we have said, it is admitted they were not) he made the payment in question. How can it be said that, in making the payment upon the extension agreements, under such circumstances, he intended to make payments on the notes, because, possibly, that may have been the legal effect of what was done. One may ineffectually do something but still intend to do it. A man might make a will witnessed by but one person and the will be invalid, yet, it could not be said that he did not intend to make a will. A woman might go through a marriage ceremony with a man, not knowing that he had a wife living, yet, it could not be said that she did not intend to enter into a marriage. Many incidents of a similar kind might be imagined where an act would be ineffectual, as not done in accordance with law, and invalid, still, the circumstances surrounding the act would establish, unequivocally, a definite intention on the part of the actor.

Plaintiff admits that she accepted the $10 payment made upon the extension agreements and, thus, ratified the acts of the bank cashier in entering into the same, but she says that she is not bound by the agreements, for the reason, that they were without consideration and that she was within her rights in repudiating, at the trial, the agreements. But whether she was within her rights in so doing is immaterial, for the reason, as we have before stated, the fact that the extension agreements were void, is not determinative of the issue.

Defendants, at the close of all of the evidence, offered an instruction in the nature of a demurrer to the evidence, which the court well could have given. At any rate, the judgment was for the right party and should be affirmed.

Plaintiff complains of the giving of defendants' instruction "D", as improperly placing the burden of proof upon her, as to the issue of intention. This instruction told the jury that the burden of proof was upon plaintiff to prove that the payment made on September 17, 1937, was intended by the defendants as a recognition of their indebtedness on the notes sued upon. It appears that this instruction properly places the burden of proof upon the plaintiff on this issue. [Burris v. Cook, 215 Mo. 496; Dennig v. Meckfessel, et al., 261 S. W. 55; Kerber v. Rowe, et al., 156 S. W. (2d) 925, 929; Regan v. Williams, *supra*.] However, as before stated, the judgment was for the right party, in any event.

The judgment is affirmed. *Cave, J.,* concurs; *Dew, J.,* dissents.