William and Suzanne STONER,
Appellants,

v.

DIRECTOR OF REVENUE, State
of Missouri, Respondent.

No. WD 73415.

Missouri Court of Appeals,
Western District.

Dec. 6, 2011.

As Modified on Denial of Rehearing
Jan. 31, 2012.

Raymond I. Plaster, Springfield, MO, for Appellants.

Chris Koster, Attorney General, Mark E. Long, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

MARK D. PFEIFFER, Presiding Judge.

William and Suzanne Stoner appeal from the judgment of the Circuit Court of Cole County, Missouri ("trial court"), in favor of the Director ("Director") of the Missouri Department of Revenue ("MO–DOR") on the Director's claim against the Stoners for breach of a 2007 delinquent tax repayment agreement that the Stoners entered into for the repayment of delinquent 1993 and 1994 tax debts. We affirm.

## Factual and Procedural Background[1]

■ William and Suzanne Stoner, husband and wife, were part owners of Branson Hills Associates, LP, and Croston–

---

1. In our review of a court-tried case, we view the evidence and inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Kolb v. DeVille I Props., LLC,* 326 S.W.3d 896, 900 (Mo.App. W.D.2010).

Everett Development Corporation—two businesses that bought and developed land outside of Branson, Missouri, in the early 1990s. The companies intended to turn the land into a mixed-use planned community. But the land-development deals eventually turned sour, causing the Stoners' businesses to close in 1996. After the businesses closed, the Internal Revenue Service ("IRS") audited the Stoners.

In November and December 2001, the IRS determined that the Stoners owed additional taxes for tax years 1993 and 1994. For tax year 1993, the IRS determined the Stoners owed $118,476.23. For tax year 1994, the IRS determined that the Stoners owed $57,184.80. However, the IRS did not notify the MO–DOR of the increased tax assessment until May 3, 2002.[2] Thereafter, the MO–DOR sent the Stoners two notices of adjustment later in 2002, informing them that they owed back taxes for 1993 and 1994.

In January 2007, the Clerk of the Missouri Supreme Court sent Mr. Stoner, a Greene County attorney, notice that his law license would be suspended for his failure to pay the 1993 and 1994 taxes. On March 1, 2007, the Stoners entered into a repayment agreement ("Delinquent Tax Payment Agreement") to pay the delinquent taxes to the MO–DOR. The Delinquent Tax Payment Agreement signed by the Stoners required payments of $1,000 each month for the months of March,

April, and May of 2007, and then a final balloon payment in June 2007 in the amount of $193,638.57.

The Stoners made the first three payments of $1,000, but instead of paying the June 2007 balance-due payment, they filed a petition against the Director on May 29, 2007, seeking a declaration that the Director was time-barred from pursuing collection of the 1993 and 1994 delinquent tax debts and from notifying the Missouri Supreme Court that Mr. Stoner was delinquent on a past tax obligation. The Director responded by filing a counterclaim against the Stoners in August 2007 seeking the remaining payment obligation due under the Delinquent Tax Payment Agreement. After a bench trial, the trial court entered judgment in favor of the Director on all claims by and between the parties. The Stoners timely appeal.

## Standard of Review

 On appeal from a court-tried civil case, the judgment of the trial court will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm

2. The Stoners argued to the trial court that, pursuant to the "Implementing Agreement for the Agreement on Coordination of Tax Administration Between the MO–DOR and the IRS," the MO–DOR should have received the information regarding the IRS calculation of additional assessed tax obligations for 1993 and 1994 by no later than January 2002. However, as the trial court pointed out, the Stoners presented no credible evidence that the MO–DOR had actually received such notice prior to May 3, 2002, the date that was consistent with the "date stamp" on the IRS written

notification to the MO–DOR and consistent with the date that representatives of MO–DOR testified that they actually received such notice from the IRS. Ultimately, the trial court was free to believe the testimony and evidence of the MO–DOR on this topic and, likewise, free to disbelieve the speculative "notice theory" of the Stoners. *See Tadych v. Horner*, 336 S.W.3d 174, 177 (Mo.App. W.D.2011) (the trial court, as the trier of fact, is free to believe or disbelieve all or part of a witness's testimony, even if that testimony is uncontroverted).

belief that the decree or judgment is wrong." *Id.*

## Point I

■ In their first point on appeal, the Stoners contend the trial court erred in finding that the statute of limitations on their tax liability did not bar the Director's counterclaim. According to the Stoners, under the "Implementing Agreement for the Agreement on Coordination of Tax Administration" between the IRS[3] and MO–DOR, the Director should have received notice about the IRS determinations of the subject additional tax liability obligations of the Stoners no later than January 2002, not May 2002.[4] Thus, the Stoners argue, the Director's counterclaim was filed outside what they claim to be the applicable statute of limitations.

■ The statute of limitations is an affirmative defense, and the Stoners bear the burden of proving that it bars the Director's claim. *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. banc 2006). The statute begins to run "when the damage resulting therefrom was sustained and capable of ascertainment." *Id.* Under section 143.861.3,[5] recovery of back taxes shall be pursued by the Director "in the same manner as provided by law in civil actions." A civil action for liability *under a statute,* other than a penalty or forfeiture, has a statute of limitations of five years. § 516.120(2).[6] The Director's counterclaim, however, did *not* assert a section 143.861.3 *statutory* entitlement to payment of delinquent taxes. Instead, the Director sued the Stoners on a breach of contract theory resulting from the Stoners' breach of the written Delinquent Tax Payment Agreement, an agreement subject to a ten-year statute of limitations. § 516.110(1).

While the Director did not file suit against the Stoners pursuant to section 143.861.3 within five years of May 3, 2002—the date the trial court expressly concluded that the Director had notice of the Stoners' tax delinquency from the IRS—the Director did enter into a Delinquent Tax Payment Agreement with the Stoners on March 1, 2007. Under the Delinquent Tax Payment Agreement, the Stoners were to make three consecutive monthly $1,000 payments beginning in March 2007 (which they did) and a final lump sum payment of $193,638.57 in June 2007 (which they did not).[7] Thus, the writ-

---

3. Under this agreement, the sharing of information was completely dependent on the IRS sending documentation to the MO–DOR. As a MO–DOR employee stated via deposition testimony, the "department doesn't have any control on when that information" is transferred.

4. The Stoners' argument over when the MO–DOR received notice from the IRS regarding additional assessments of tax liability to the Stoners is, as they say, "much ado about nothing." The Director did not sue the Stoners for civil liability under a statute (i.e. five-year statute of limitations); instead, the Director sued the Stoners for breach of a written agreement (i.e. ten-year statute of limitations).

5. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

6. The five-year statute of limitations for civil actions under section 516.120, not the three-year limit of section 143.951, applies to statutory tax collection actions. *State ex rel. Lohman v. Black,* 980 S.W.2d 41, 42–43 (Mo.App. W.D.1998).

7. We suspect that the trial court found little coincidence in the Stoners agreeing to make modest ($1,000) monthly payments from March 2007 through May 2007 and agreeing to the lump sum payment in June 2007, such that the bulk of the tax obligation remained outstanding in June 2007—the time period

ten Delinquent Tax Payment Agreement triggered a ten-year statute of limitations time period under section 516.110(1),[8] and the Director's counterclaim against the Stoners to enforce the written terms of payment of the Delinquent Tax Payment Agreement was clearly filed within the applicable statute of limitations time period.[9]

Point I is denied.

## Point II

■ In their second point on appeal, the Stoners argue that because the Greene and Webster County tax liens filed against them [10] were not converted into judgments under section 143.902, within five years, any claims arising under the liens are time-barred. Because the Director's counterclaim against the Stoners was a breach of contract claim and not a tax lien enforcement claim, the Stoners' second argument on appeal is legally irrelevant. As the following analysis reflects, tax lien enforcement via section 143.902 is *cumulative* of all other remedies available to the Director for the collection of tax debts.

Under section 143.902.1(2), if a taxpayer does not pay taxes when due and for which there is a final assessment, the Director may file a certificate of lien with the clerk of the county court where the taxpayer lives, owns property, or has a place of business. In this case, the Director filed such liens against the Stoners in Webster and Greene Counties.

Once a lien is filed, the clerk of the circuit court is to "file such certificate and enter it in the record of the circuit court for judgments and decrees." § 143.902.1(2). "From the time of the filing of the certificate of lien ... with the clerk of the circuit court, the amount of the tax, interest, additions to tax and penalties specified therein shall have the full force and effect of a default judgment of the circuit court until satisfied." § 143.902.1(2). "Execution shall issue at the request of the director of revenue or his agent as provided in the case of other judgments." § 143.902.1(2). Further, under section 143.902.1(1), a tax lien "shall expire ten years after the certificate of lien was filed" with the recorder's office. The Director can re-file a tax lien within that ten-year period, extending the lien for another ten years. § 143.902.1(1). Unless the liens are released by the Director, they remain in place for that ten-year period. During that time period, the lien is attached to the Stoners' "real or personal property or interest in real or personal property owned by the [Stoners] or acquired in any man-

the Stoners claim is in excess of five years of MO–DOR's admission of receiving notice of the tax obligations in May 2002.

8. "An action upon any writing ... for the payment of money" shall be filed "[w]ithin ten years." § 516.110(1).

9. Even assuming *arguendo* that the Stoners could successfully argue that an applicable statute of limitations period had expired, "voluntary payment rendered after expiration of the statute of limitations demonstrates a debtor's acknowledgement of the outstanding debt and intent to renew the promise to pay, thereby taking the case out of the statute." *Crockett v. Polen*, 225 S.W.3d 419, 420 (Mo. banc

2007). Here, the Stoners made not one but three payments on the outstanding debt in 2007, indicating their intent to repay the more than $196,000 tax debt owed.

10. In January 2000, the Director filed a tax lien against the Stoners (unrelated to the subject 1993 and 1994 tax obligation deficiencies) in Webster County and later re-filed that tax lien in December 2009. In December 2009, when the Webster County tax lien was re-filed, the 1993 and 1994 tax obligations were added to the certificate of lien. Also in December 2009, the Director filed a tax lien against the Stoners in Greene County, the subject of which was the 1993 and 1994 tax obligation deficiencies.

ner by the [Stoners] after the filing of the certificate of the lien." § 143.902.1(1). If the Stoners do not satisfy the tax liens, the Director may request that the liens be executed. § 143.902.1(2). The Director can request that they be so executed but is not required to do so under the statutory language.

The Stoners essentially argue that section 516.120(2)[11] operates to reduce the legal effect and enforcement of a ten-year certificate of lien created under section 143.902.1. While the Stoners' argument is a novel theory, it is irrelevant to the subject proceeding in that the Director's judgment is based upon a contract, not statutory, theory. And, clearly, the lien-judgment remedy contemplated in section 143.902.1(2) is not the exclusive method of pursuing a tax debt. The lien-judgment remedy can be taken "in addition to other collection methods given the director of revenue," such as the Director's counter-claim in this case. § 143.902.1(3).

For the reasons addressed in our analysis of Point I, the Director was not time-barred from seeking enforcement of the Stoners' breach of the Delinquent Tax Payment Agreement, a legal theory that was cumulative to any rights the Director may have possessed under section 143.902.1.

Point II is denied.

### Point III

In their third point on appeal, the Stoners argue that they[12] did not vol-

11. "An action upon a liability created by a statute" shall be filed "[w]ithin five years."

12. For the first time on appeal, the Stoners briefly argue that Mrs. Stoner is not liable on the Delinquent Tax Payment Agreement because Mr. Stoner signed Mrs. Stoner's name on the agreement without her authorization. While Mr. Stoner did testify that he signed for Mrs. Stoner and Mrs. Stoner said in her deposition that she did not authorize Mr. Stoner to sign for her, this argument was not made to the trial court—Mrs. Stoner did not raise any affirmative defense in her argument or pleading to the trial court that stemmed from this purportedly unauthorized signature. "Claims which were not presented to the [trial] court cannot be raised for the first time on appeal." *Amrine v. State*, 785 S.W.2d 531, 535 (Mo. banc 1990). To allow an argument to be made for the first time on appeal deprives the trial court of its opportunity to thoughtfully consider and make a ruling on the argument.

Though the Stoners raise the argument for the first time on appeal, it does warrant some brief consideration. While there is no agency relationship between Mr. and Mrs. Stoner simply because of their marital relationship, a husband can have implied authority to contract on behalf of himself and his wife if "the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for him or her." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 647 (Mo.App. W.D.2002) (internal quotation omitted). In addition, a non-signing spouse will be bound on the contract if he or she later ratifies the contract. *Id.* In this case, the trial court did not specifically rule on the issue of whether Mrs. Stoner was bound to the agreement via Mr. Stoner's signatures—because the Stoners did not raise the argument at the trial court level—but even so, this court views all evidence and inferences therefrom in the light most favorable to the trial court's judgment and the trial court is free to believe or disbelieve any evidence, even if the evidence is uncontroverted. *Kolb*, 326 S.W.3d at 900; *Tadych*, 336 S.W.3d at 177. Therefore, the trial court was free to disbelieve any testimony from Mr. or Mrs. Stoner that Mr. Stoner did not have Mrs. Stoner's authority to sign her name to the contract and the inference most favorable to the judgment, in this case, is that Mr. Stoner did have such authority or that Mrs. Stoner later ratified his actions.

Further, even though their third Point Relied On mentions the fact that Mrs. Stoner did not sign the agreement, the Stoners have not provided this court with any legal support for the contention that Mr. Stoner could not bind his wife to the agreement by signing her name. The Stoners, as appellants, bore the burden of providing this court with the rele-

untarily enter into the Delinquent Tax Payment Agreement or voluntarily make payments pursuant to any such agreement, but instead, the agreement and payments were the product of duress. They also argue that the Delinquent Tax Payment Agreement was, in fact, not an "agreement." Thus, the Stoners again claim that the Director's breach of contract counterclaim was actually a time-barred statutory claim for enforcement of their delinquent tax obligations. Again, we disagree.

*Duress Argument*

■■■ At trial, Mr. Stoner claimed he was under duress to enter into the Delinquent Tax Payment Agreement and make payments under the agreement and, as such, his conduct in doing so was not voluntary. Mr. Stoner claimed that because his law license would be suspended if he did not agree to repay the debt, he would suffer humiliation from such an "untenable situation," and the prospect of license suspension was "just awful" and "notorious" and "open," his conduct in entering into the agreement and making payments under the agreement could not be deemed voluntary. And, as Mr. Stoner argues, because his and Mrs. Stoner's conduct in entering into the agreement and making payments could not be deemed "voluntary," those actions could not be used to defeat his argument that the Director's contract claim was really nothing more than a time-barred statutory claim to enforce the Stoners' tax obligations.

■■■ It is true that a "payment under fraud or duress cannot be voluntary." *Cridlebaugh v. Putnam Cnty. State Bank of Milan,* 192 S.W.3d 540, 544 (Mo.App. W.D.2006). But for a claim of duress to succeed in Missouri, the person under duress must be " 'prevented from exercising his free will by the threats or *wrongful conduct* of the other' " party. *Andes v. Albano,* 853 S.W.2d 936, 942 (Mo. banc 1993) (emphasis added) (citation omitted).

■■■ A claim of duress centers on oppression caused by wrongful conduct of another that deprives the party under duress of his free will. *Schmalz v. Hardy Salt Co.,* 739 S.W.2d 765, 768 (Mo.App. E.D.1987).[13] A duress claim will fail when " 'there is full knowledge of the facts of the situation and ample time for full and free investigation, deliberation, and reflection.' " *Ensign v. Home for Jewish Aged,* 274 S.W.2d 502, 508 (Mo.App.1955) (citation omitted).

Under section 484.053, RSMo Cum. Supp.2010, the Director is authorized to develop a cooperative agreement with the Clerk of the Missouri Supreme Court to report attorneys who owe back taxes. Under such cooperative agreement with the Clerk of the Missouri Supreme Court, the Director is authorized to report tax-delinquent attorneys to the clerk and, upon doing so, "the clerk shall notify the law-

vant legal support for their argument. Rule 84.04(e). Without such support, their argument is deemed abandoned and must fail. *Lueker v. Mo. W. State Univ.,* 241 S.W.3d 865, 868 (Mo.App. W.D.2008) ("An appellant has the obligation to cite appropriate and available precedent or explain why such authority is not available if she expects to prevail.").

13. "Where an experienced business man takes sufficient time, seeks the advice of counsel and understands the content of what he is signing he cannot claim the execution of the release is the product of duress." *Schmalz v. Hardy Salt Co.,* 739 S.W.2d 765, 768 (Mo.App. E.D.1987). Here, Mr. Stoner had approximately thirty years' experience as a licensed attorney, and the trial court was entitled to believe that he knew what he was signing, why he was signing it, and that he entered into the agreement with free will as opposed to duress.

yer [14] that the lawyer's license to practice law is subject to automatic suspension unless the matter is satisfactorily resolved within 30 days of the date of the last notice sent by the clerk." Rule 5.245(a). The first notice from the clerk shall be sent "within 30 days after the clerk receives the lawyer's name from the director." Rule 5.245(b).

In this case, the Director's conduct in advising Mr. Stoner that she intended to initiate the Rule 5.245 process of notifying the Clerk of the Missouri Supreme Court of Mr. Stoner's tax delinquency was not "wrongful conduct." [15] It was based on application of Missouri law. As the trial court pointed out, "application of a Missouri statute and a Missouri Supreme Court rule is not a wrongful act. Likewise, wanting to avoid the application of a Missouri statute and Missouri Supreme Court rule is not 'duress.' "

Furthermore, there was substantial evidence in the record to support the trial court's judgment that Mr. Stoner was not so pressured as to be "bereft of the quality of mind essential to the making of a contract." *Thomas v. Thomas (In re Marriage of Thomas)*, 199 S.W.3d 847, 859 (Mo.App. S.D.2006). Mr. Stoner had full knowledge of the facts. There was ample time—from December 2001, when he received notice of his back taxes, through March 1, 2007, when he signed the agreement—to consider his options and find a way to satisfactorily resolve the matter

and avoid suspension of his law license. He did not do so, and his failure to do so is not the product of duress.

*Voluntary Nature of Agreement*

■ The Stoners also argue the agreement was involuntary and rely upon *Green v. Boothe*, 239 Mo.App. 73, 188 S.W.2d 84, 89 (Mo.App.1945):

[I]t appears that in order for the cause of action to be saved from the running of the statutes of limitations, not only that the debtor make a payment upon the obligation, but that it be made under circumstances showing an intention to pay the balance, and the burden of proof to show such intent is upon the creditor.... However, if [the debtor] accompanies his acknowledgment, either directly or by part payment of the debt, with the statement that he does not recognize an obligation to pay the balance, the acknowledgement is ineffectual.

The Stoners claim the Delinquent Tax Payment Agreement was entered into for the express purpose "to *dispute* the debt and *not pay* the balance." The Delinquent Tax Payment Agreement, however, shows just the opposite, as does the actual conduct of the Stoners after entering into the agreement. The Delinquent Tax Payment Agreement expressly states that it was entered into "for the purpose of liquidating the delinquent individual tax liability due the State of Missouri for the period(s): 1993 and 1994." It is undisputed that

---

**14.** Stoner was notified by the clerk on January 29, 2007, over a month before the Stoners entered into the Delinquent Tax Payment Agreement.

**15.** An argument similar to the Stoners' was addressed in *United States v. Martin*, 274 F.Supp. 1002 (E.D.Mo.1967). In *Martin*, the taxpayer was assessed back taxes and signed an agreement stating he owed the same. *Id.* at 1003. According to Martin, he only signed the agreement because the IRS agent told him

" 'you had better get down here and sign these papers or I will drag you into court.' " *Id.* at 1005. Martin claimed the agreement was signed under duress and, therefore, could not extend the statute of limitations. The Missouri federal district court held that "[t]he assertion of an intention to pursue a legal remedy is not ordinarily considered duress, and this is especially true when there is ample time for investigation and deliberation." *Id.*

these tax obligations related to *both* Mr. and Mrs. Stoner for their jointly filed tax returns for the years 1993 and 1994. While Mrs. Stoner claims for the first time on appeal that Mr. Stoner was not authorized to sign her name and obligate her to the terms of the Delinquent Tax Payment Agreement, it is undisputed that, after entering into the Delinquent Tax Payment Agreement, the Stoners did make voluntary payments pursuant to the terms of the Delinquent Tax Payment Agreement. There is no evidence in the record that Mrs. Stoner claims she was unaware of these payments or that she did not authorize these payments on behalf of both she and her husband.

■■■ "An acknowledgement in writing of a debt to remove the bar of the statute of limitations must contain an unqualified and direct admission of a present subsisting debt," and must be unaccompanied by a voiced intention to not pay the debt. *Forry v. Dep't of Nat. Res.*, 889 S.W.2d 838, 843–44 (Mo.App. W.D.1994) (citing *Green*, 188 S.W.2d at 88).

Neither the trial court nor we are persuaded that the Stoners voiced or followed through with an expressed intention to protest and refuse to pay the tax debt that was agreed to be paid under the terms of the Delinquent Tax Payment Agreement (and was partially paid pursuant to those terms) at the time of entering into the Delinquent Tax Payment Agreement. By his own admission, Mr. Stoner was "cagey" about how he communicated with MO–DOR employees because he didn't want someone "monkeying with the documents" showing when the MO–DOR received notice of his tax liability. At best, Mr. Stoner predicted that he would not have to pay the entire tax obligation referenced by the

Delinquent Tax Payment Agreement because he had "things cooking in the tax process." That is hardly a statement of "involuntariness." Simply put, the Stoners have not made a persuasive argument that the agreement they entered into with MO–DOR and their corresponding payments thereunder were involuntarily made.

*Accord Executory* [16]

■■■ Relying on *Ingram v. Rinehart*, 108 S.W.3d 783 (Mo.App. W.D.2003), the Stoners contend that the Delinquent Tax Agreement was an *accord executory* and not an enforceable agreement. In *Ingram*, Rinehart was sued for injuries arising out of an automobile accident. Before the jury trial, Rinehart moved to enforce a settlement agreement purportedly reached by the parties. At trial, Rinehart admitted his liability for the accident and liability for Ingram's medical and economic damages; the jury "returned substantial verdicts" in favor of Ingram on the remaining issue of non-economic damages but denied her punitive damages claim. *Id.* at 785. On appeal, Rinehart argued that "the trial court erred in refusing to permit the jury to hear evidence regarding his affirmative defense of settlement." *Id.* The court determined there was, at best, an accord executory between Ingram and Rinehart *because there was never any payment made to Ingram under the proposed settlement. Id.* at 790–92. Consequently, the *Ingram* court concluded that there was insufficient evidence of a settlement agreement where the alleged agreement was nothing more than an expression by one of the parties of a "willingness" to make future payments without any corresponding action leading to an actual and enforceable agreement to do so or any

---

16. An accord executory is defined as " 'an agreement for the future discharge of an existing claim by a substituted performance.' "

*Ingram v. Rinehart,* 108 S.W.3d 783, 790 (Mo. App. W.D.2003) (citation omitted).

conduct (i.e. payment) reflecting that such an agreement had been made. *Id.*

Unlike *Ingram,* the Stoners *have* made payments under the Delinquent Tax Payment Agreement that they now claim is an accord executory. Unlike *Ingram,* the Stoners did not communicate a "willingness" to pay; instead, they entered into an agreement acknowledging an "obligation" to pay and, in fact, have made payments under the Delinquent Tax Payment Agreement. Quite simply, there is nothing "executory" about the Delinquent Tax Payment Agreement, and the Stoners' reliance on *Ingram* is misplaced.

Point III is denied.

### Point IV

In their final point, the Stoners argue that the trial court erred in refusing to grant Mr. Stoner declaratory relief forbidding the Director from submitting his name to the Clerk of the Missouri Supreme Court as an attorney delinquent in his tax obligations. The Stoners contend that since their personal tax liability should be barred by the statute of limitations, the trial court erroneously failed to instruct the Director that no tax obligation delinquency should be communicated to the Clerk of the Missouri Supreme Court.

 Missouri courts "'have long held that declaratory relief power does not abolish or provide an additional existing remedy but instead addresses a deficiency or bridges a superfluity in the law.'" *Huff v. Dewey & LeBoeuf, LLP,* 340 S.W.3d 623, 627 (Mo.App. W.D.2011) (citation omitted).

> "[I]t serves no sensible end to allow a defendant to seek a declaration by the trial court that he has a meritorious defense to the pending action." Therefore, "a declaratory judgment action will not lie where the declaration is being

sought to defend against an action brought against the party seeking declaratory relief." "This rule is especially applicable where the issues sought to be declared have been asserted as a defense in the same litigation."

*Id.* at 628 (citations omitted).

Here, the Stoners sought just that—a declaration that they possessed a meritorious defense to any claim by the Director that the Stoners owed tax deficiencies. Not only does *Huff* procedurally prevent the relief requested by the Stoners in this regard, there is also no substantive basis to the Stoners' alleged meritorious defense—as addressed in Points I–III.

Point IV is denied.

### Conclusion

The trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Therefore, the judgment is affirmed.

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.